MRS. ALVAH BAYON *vs.* JOHN G. BECKLEY.

(JOHN G. BECKLEY'S APPEAL FROM COMPENSATION COMMISSIONER.)

First Judicial District, Hartford, January Term, 1915.
PRENTICE, C. J., THAYER, RORABACK, WHEELER and BEACH, Js.

Chapter 138 of the Public Acts of 1913, commonly known as the Workmen's Compensation Act, in Part A abolished the so-called common-law defenses theretofore available by an employer in an action by an employee for personal injuries, but provided in § 2 that such abrogation should not affect actions against an employer having regularly less than five employees, nor should it apply to "any employer" who should have accepted Part B of the Act, which prescribed a scheme of compensation for injured workmen in lieu of an action for damages.  *Held* that the distinction drawn in Part A between the employers of less than five and other employers, did not extend to Part B, but that all employers, without regard to the number of hands regularly employed by them, came within the scope of Part B and might accept or reject the compensation scheme therein prescribed at their option; although the employers of less than five, not being deprived of their common-

law defenses, might not have the same incentive or inducement to accept the Act that employers of a larger number would have.

Section 30 of the Act required every employer subject to Part B to insure his full liability, if he did not furnish to the commissioner satisfactory proof of his solvency and financial ability to pay compensation to his injured employees; and § 42 declared that an employer who had accepted Part B and afterward failed to comply with the provisions of § 30, should thereby "forfeit all benefits thereunder and shall be liable as if he had not accepted the same." *Held* that the "benefits" of which the employer was deprived by his failure to conform to § 30, was his immunity from a common-law action for damages; but that such failure of the employer did not deprive the employee who had accepted Part B of all his rights and benefits under it, but left him in a situation in which he could either claim compensation under the Act, as in the present case, or pursue his remedy by an action at common law as modified by Part A.

The intention of the legislature in passing an Act is to be ascertained from the words it has used in the statute, when read in the light of the circumstances surrounding the legislative body at the time, and in connection with the history and progress of kindred legislation.

Upon an appeal from the finding and award of the compensation commissioner, costs lie where they fall, that is, each party is to pay his own.

A record fee is properly exacted in such a proceeding.

Argued January 15th—decided February 23d, 1915.

APPEAL from the finding and award of the Compensation Commissioner for the first district, under the Workmen's Compensation Act of 1913, taken to and reserved by the Superior Court in Hartford County, *Gager, J.*, upon such finding and award, for the advice of this court. *Superior Court advised to dismiss the appeal.*

*Thomas J. Spellacy,* for the respondent.

*Thomas Hewes,* for the claimant.

THAYER, J.   This is a proceeding under chapter 138 of the Public Acts of 1913, p. 1735, entitled "An Act

concerning Compensation to Workmen injured in the Course of their Employment" (commonly called the Workmen's Compensation Act), to obtain compensation for personal injuries sustained by the claimant while employed by the respondent. The portions of the Act which bear upon the questions before us are printed in the foot-note.   The Superior Court, to which

Part A.   Employers' Liability.

Section 1. *Defenses Abolished.*   In an action to recover damages for personal injury sustained by an employee arising out of and in the course of his employment, or for death resulting from injury so sustained, it shall not be a defense: (a) That the injured employee was negligent; (b) that the injury was caused by the negligence of a fellow employee; (c) that the injured employee had assumed the risk of injury.

Sec. 2. *Scope of Part A.*   The provisions of section one of part A of this act shall not apply to actions to recover damages for personal injuries sustained by employees of any employer having regularly less than five employees, by casual employees, or by outworkers; nor shall the same provisions apply to actions against any employer who shall have accepted part B of this act in the manner hereinafter prescribed.

Part B.   Workmen's Compensation.

Section 1. *Acceptance of Part B.*   When any persons in the mutual relation of employer and employee shall have accepted part B of this act, the employer shall not be liable to any action for damages on account of personal injury sustained by an employee arising out of and in the course of his employment or on account of death resulting from injury so sustained; but the employer shall pay compensation on account of such injury in accordance with the scale hereinafter provided, except that no compensation shall be paid when the injury shall have been caused by the willful and serious misconduct of the injured employee or by his intoxication. . . .

Sec. 2. *Acceptance Presumed.*   Every contract of employment not made before the date of this act shall be conclusively presumed to include a mutual agreement between employer and employee to accept part B of this act and be bound thereby, unless either employer or employee shall by written stipulation in the contract, or by such other notice as is prescribed in section three of part B, indicate his refusal to accept the provisions of said part B.   Every contract of employment made before the date of this act and continued in force after said date shall be conclusively presumed to include a mutual agreement between employer and employee to accept part B of this act and be bound thereby, unless by the date at which this act goes into effect either em-

the respondent appealed from an award by the compensation commissioner in favor of the claimant, has reserved for the advice of this court the questions of law arising upon "the facts contained in the 'Finding and Award' of the compensation commissioner." These, so far as material to the case, are as follows: A contract of employment existed between the claimant and respondent on May 2d, 1914. Both parties had accepted Part B of the Act, because neither party had refused to accept it nor had either withdrawn his acceptance. On the 7th of May the claimant was personally injured while shaking a rug in the course of her employment. The injury arose out of her employ-

ployer or employee has indicated his refusal to accept said part B in the manner prescribed in section three of said part B.

Sec. 3. *Manner of Acceptance and Withdrawal.* Acceptance of part B of this act may be withdrawn by written or printed notice from either employer or employee to the other party and to the compensation commissioner of the district in which the employee is employed. Notice of withdrawal may be served by personal presentation or by registered letter addressed to the person on whom it is to be served at his last known residence or place of business; and such notice shall become effective thirty days after service. Either employer or employee who has withdrawn acceptance may renew the same by the same notice and procedure as is prescribed for withdrawals. Notices in behalf of a minor shall be given by his parent or guardian, or, if there be no parent or guardian, then by such minor.

Sec. 4. *Effect of Non-Acceptance.* Every employer not accepting part B of this act shall be liable to action for damages on account of personal injury to his employees in accordance with the provisions of part A of this act, and every employee not accepting part B of this act shall lose all rights and benefits of part A of this act with reference to any employer who continues to accept said part B.

Sec. 30. *Insurance of Compensation Liability.* Every employer subject to part B who shall not furnish to the commissioner satisfactory proof of his solvency and financial ability to pay directly to injured employees or other beneficiaries the compensation provided by this act, shall insure his full liability under part B. . . .

Sec. 42. *Failure to Observe Act.* Any employer who has accepted part B of this act and who thereafter fails to conform to any of the provisions of section thirty of part B, shall thereby forfeit all benefits thereunder and shall be liable as if he had not accepted the same. . . .

ment, and was not caused by the claimant's wilful and serious misconduct or by her intoxication. The respondent had failed to comply with the provisions of § 30 of Part B. of the Act. He regularly employed less than five persons.

The respondent claims that upon this state of facts he is not liable to compensate the claimant for her injury: (1) because the Act does not affect employers having regularly less than five employees; and (2) because, if such employers are within the provisions of the Act, and the respondent was therefore properly presumed to have accepted Part B because neither he nor the claimant had refused to accept it, he thereby incurred no liability to compensate the claimant for any injury under Part B, for the reason that he failed to comply with the provisions of § 30; and that, if liable to her at all for her injuries, it is only in an action at law. Part B, § 42.

These claims present two questions of law for our decision: first, are employers who regularly have less than five employees within the scope of Part B; second, if they are, does a failure to comply with the provisions of § 30 of Part B deprive not only them, but also their employees, of the benefits of its provisions. If either of these claims is correct, the compensation commissioner exceeded his powers in awarding compensation to the claimant, and the award appealed from should be set aside; otherwise the appeal should be dismissed.

Section 1 of Part B provides that "when any persons in the mutual relation of employer and employee shall have accepted part B of this act, the employer shall not be liable to any action for damages on account of personal injury sustained by an employee arising out of and in the course of his employment . . .; but the employer shall pay compensation on account of such injury in accordance with the scale hereinafter pro-

vided." This language is broad enough to include every employer who has accepted Part B, whether he regularly has five or less than five employees. The same is true of the following language contained in § 2 of Part B: "Every contract of employment not made before the date of this act shall be conclusively presumed to include a mutual agreement between employer and employee to accept part B of this act and be bound thereby"; and again, "every contract of employment made before the date of this act . . . shall be conclusively presumed to include a mutual agreement between employer and employee to accept part B." By these two provisions the employer, whether of less than five or more than five employees, named in any contract existing at the date of the Act or made afterward, is conclusively presumed to have accepted Part B, unless he or the employee has indicated his refusal to accept it. There is thus expressed in Part B a clear intention on the part of the legislature that it shall apply to all employers. There is nowhere in Part B of the Act any language which shows an intention to exclude from the "benefits" of Part B any employer or any employee who shall wish to accept it.

It is claimed in behalf of the respondent that the legislature which enacted the law in fact intended to exclude, from those who may accept Part B, all employers who regularly employ less than five persons, as shown by remarks made by members during the debates upon the compensation bill and since its passage, and that this intent is expressed by the language of the Act, if parts A and B are read together in view of the history and progress of legislation relating to employers' liability and workmen's compensation. We cannot poll the legislature which enacted the Act in question, to determine its intention, nor regard what individual members thereof are reported to have since said was its intention.

We are to ascertain the intention of the legislature from the words which it has used in the Act (*State ex rel. Judson* v. *County Commissioners*, 68 Conn. 16, 23, 35 Atl. 801; *Lee Bros. Furniture Co.* v. *Cram*, 63 Conn. 433, 437, 438, 28 Atl. 540) reading all its parts together, as the respondent correctly claims, in view of the circumstances surrounding the legislature at the time the statute was passed, and the history and progress of kindred legislation. *New York & N. E. R. Co.'s Appeal from Railroad Commissioners*, 62 Conn. 527, 534, 26 Atl. 122; *Quinebaug Bank* v. *Tarbox*, 20 Conn. 510, 518.

Part A, subtitled "Employers' Liability," relates to actions "to recover damages for personal injury" caused by the negligence and default of the employer "sustained by an employee arising out of and in the course of his employment," and in § 1 it abolishes the defenses of contributory negligence, negligence of a fellow-servant, and assumption of risk, in all those actions of this character which are within the scope of Part A. Certain actions of this character are not within the scope of Part A, and these are designated in § 2.

Part B, subtitled "Workmen's Compensation," relates to the compensation of employees by their employers for personal injuries sustained by them in the course of their employment and arising out of it. The injuries for which compensation is here given are not confined to those due to the employer's wrongful act, as is the case in the actions referred to in Part A, but may arise solely from the employee's own negligence or fault, from the negligence or fault of a fellow-servant, or of some third party. Prior to the passage of the present Act, employers' liability laws, in which some or all of the so-called common-law defenses were in whole or in part abolished, and workmen's compensation Acts

providing for compensation to employees for personal injuries growing out of their employment, had been enacted at the insistence of the working and industrial classes in various States of this country and in Europe; the liability laws, upon the claim that under the conditions of modern industry it is unfair and inequitable to the employee to permit the common-law defenses to be made to his action for damages for personal injuries growing out of his employment and due to his employer's tort; the compensation Acts, upon the theory that compensation for the employee's personal injury, unless such injury is caused by his own misconduct, is a proper charge against the employer as a part of the cost of his business which will ultimately be paid by the consumer. The respondent in his brief claims, we think correctly, that the compensation Acts were the successors of the liability Acts, and that the compensation Acts, because they obviated the expense and waste inevitable in the common-law actions and insured the payment of a small amount to all injured employees "rather than nothing to most and a large settlement to a few, became popular and were in line of modern progressive legislation and were everywhere recognized as beneficial."

Both liability and compensation Acts generally excepted or excluded certain industries or certain classes of employers or employees from their provisions. Acceptance of some of these Acts was compulsory and of others optional. The courts had declared some of the compulsory Acts to be unconstitutional, and some optional Acts had been declared to be constitutional. These facts relating to the history and progress of this class of legislation, we may presume, were familiar to the legislature when our present compensation law was enacted.

Entitled as a "Compensation Act," it embodies

within it the employer's liability provision found in Part A. It is the claim of the respondent that § 2 of Part A removes from the operation of § 1 four classes of employers, and thus saves to them the right to make the so-called common-law defenses. These classes are: (1) employers having regularly less than five employees, (2) employers of casual employees, (3) employers of outworkers, and (4) "any employer" who shall have accepted Part B. It is said that as each of these constitutes a distinct class, the words "any employer," contained in the description of the fourth class in the last clause of § 2, must mean any employer other than one who belongs to one of the other three classes; and, conversely, that any employer belonging to either of the other exempted classes is not included in the class of employers who have accepted Part B; and, therefore, that employers having regularly less than five employees comprising class 1 are not within Part B. That there is somewhere a fault in this logic, assuming that the respondent's classification is correct, is manifest from a simple application of its propositions to situations which are likely to arise daily. An employer of class 1, employing regularly less than five employees, may occasionally call in a casual employee. An employer of class 4, employing regularly more than five employees, may employ an outworker or casual employee. The same person, therefore, may belong to two or more of the classes mentioned. How, then, can it be said that the words "any employer," contained in the description of class 4, means an employer other than one included in one or the other of the three remaining classes?

But reference to § 2 of Part A shows that its purpose is to except from the class of actions mentioned in § 1, certain actions of that class which are designated in § 2. Three of these are designated by reference to the char-

acter of the employee who sustains the injury sued for and who brings the action. The fourth is designated by reference to the character of the employer against whom the action is brought. If, to avoid circumlocution, we call employers having regularly more than five employees large employers, and those having regularly less than five employees small employers, and, correspondingly, employees of the former large employees and those of the latter small employees,—§ 2 removes from the scope of Part A, and thus from the class of actions to which § 1 of Part A refers, actions by small employees, actions by casual employees, actions by outworking employees, and actions against employers who have accepted Part B. It is apparent that an action by a small employee may be brought against an employer who has accepted Part B, if an employer who has regularly less than five employees can accept Part B. Now the respondent's argument assumes that a small employer cannot be within the class of employers who may accept Part B, and thus assumes the very fact which it is its purpose to establish. The argument fails to show that the small employer and his employees are expressly excluded from accepting Part B by the language of Part A when read by itself or in connection with that of Part B.

By § 1 of Part B the employer is not liable to an action for personal injuries brought against him by his employee when both have accepted Part B. The provision of § 2 of Part A, that the provisions of § 1 of Part A shall not apply to actions against employers who have accepted Part B, can therefore be operative only in two cases: first, where the employer has accepted Part B and the employee has refused to accept it, and second, where both parties have accepted it and the employer thereafter has failed to conform to the provisions of § 30 of Part B. In the second case, § 42 of Part B

declares that the employer shall forfeit "all benefits" under Part B and shall be liable as if he had not accepted the same. Passing this case for the moment, it is provided in § 4 of Part B that, in cases like that first mentioned, the employee having refused to accept Part B shall lose "all rights and benefits" of Part A. The effect of this, when read in connection with Part A, is to save to the employer his common-law defenses in such an action. Parts A and B, read together, show that where neither party to the employment contract accepts Part B, or when the employee accepts and the employer refuses to accept it, the common-law defenses are not available to an employer who has more than five employees, but are available to those having less than that number. It thus appears, as it is claimed, that there is an inducement to the large employer to accept Part B, while no such inducement exists in the case of the small employer. It is claimed that one of the chief purposes of Part A is to present an inducement to employers to accept Part B, and that the fact that no inducement to accept Part B is given to the small employers—the common-law defenses being left to them—indicates an intention on the part of the legislature not to include the small employers in the Act. And it is further urged in behalf of the respondent that it is inherently improbable that the legislature intended that domestic servants, farm hands, casual employees, etc., should have the benefit of Part B. When it is remembered that it is optional with either party to the employment contract to accept or reject the compensation scheme of the Act, that the common-law defenses are preserved to the small employer in such a contract, and that it is possible that there may be frequent cases where it would be to the advantage of both parties to accept Part B,—it is quite possible that the legislature intended that the right to accept Part B should be

given to small employers and their employees, although holding out less inducement to them to do so than to the large employers and their employees. If it be true, as it probably is, that the small employers, as of domestic servants, farm hands, casual employees, etc., are the ones most likely to prefer the common-law rule to the compensation scheme of Part B, and the ones most entitled to exemption from the latter, those facts afford a reason why the legislature, if it intended that the Act should be optional, did not offer inducements approaching compulsion (as taking away the common-law defenses would be in some cases) to cause such employers to accept the Act. The fact that they were not subjected to the burdens imposed by § 1 of Part A is no reason why they should be excluded from the burdens or benefits, as the case may be, of Part B, if they desire to accept them. The legislature might believe it to be the better policy to leave it to the choice of the parties whether they would accept or not, making acceptance by both parties necessary to bring them within Part B.

The removal, by Part A, of the common-law defenses in actions for damages for personal injuries resulting from the employers' tort, was in itself legislation similar to that which had been enacted in other States disconnected with any scheme of compensation. Had it stood alone as an independent Act, it would have been deemed a proper piece of legislation. The liability to damages at common law, the amount of which would depend upon the uncertainties of litigation, would be some inducement to the acceptance of a reasonable compensation Act. With the common-law defenses removed, that inducement would be increased.

But we are not to assume that the legislature, in enacting Part A, intended to pass an unjust Act to induce the employers to accept another unjust one. We are to assume that the legislature believed both

parts of the Act to be proper and just legislation, beneficial to the public and just to the parties to be affected by them. As already stated, such enactments, disconnected with each other in some cases, existed in other jurisdictions. Why, then, should we assume that the sole or chief purpose of Part A was to compel the employers affected by it to accept Part B? And. if it was not the purpose, the fact that the small employers are unaffected by Part A affords no ground for the inference that it was intended that they should not be affected by Part B.

It is true that some inconvenience will result to the parties to employment agreements under Part B, by reason of the requirement that the parties shall give notices to each other and to the compensation commissioner, of their acceptance or refusal to accept Part B, etc., and that in the case of casual employers and small employers the trouble involved seems disproportionate and unnecessary. But this is a matter of detail not affecting the validity or construction of the Act. The same notices are required in the case of small as of large employers. If the burden of giving these notices is found, in either case, to be too onerous, it may easily be removed by an amendment to the Act.

We think that employers having less than five employees are included within the provisions of Part B of the Act.

The remaining question is as to the effect of the respondent's failure to comply with § 30 of Part B, and depends upon the construction of § 42 of Part B, which reads: "Any employer who has accepted part B of this act and who thereafter fails to conform to any of the provisions of section thirty of part B, shall thereby forfeit all benefits thereunder and shall be liable as if he had not accepted the same."

The chief benefit accruing to an employer from his

acceptance of Part B, is that he is thereby relieved from liability to any action for damages on account of personal injuries to his employees. If he had not accepted Part B, he would be liable for such injuries according to the rule of the common law as modified by Part A. When, therefore, § 42 provides that he shall forfeit all benefits under Part B and be liable as if he had not accepted the same, the literal meaning of the language is that his failure to comply with the provisions of § 30 deprives him of the right to exemption from liability at common law for injuries to his employees arising out of their employment, and renders him liable to such actions as modified by Part A. This is his situation when he refuses to accept Part B, or, having accepted it, withdraws his acceptance. It is also the situation when the employee refuses to accept Part B, or, having accepted, withdraws his acceptance; for the employer in such case, although he still adheres to his acceptance of Part B, is relegated to his common-law rights.

The effect of § 42 clearly is to render the employer who does not comply with § 30 liable as he would be had he not accepted Part B; but it does not follow that he is also relieved from liability under Part B to compensate his employee for injuries for which the latter could not recover at common law. While providing that the employer's noncompliance with § 30 results in a forfeiture of all his benefits under Part B, § 42 does not in terms say that the employee loses all his rights and benefits under Part B. Nothing is said as to its effect upon the employee; but by making the employer liable as if he had not accepted the Act, it necessarily restores to the employee his common-law right of action, as modified by Part A, against the employer. This is the clear implication from the language. If Part B gave compensation only for personal injuries for which a common-law action would lie, it would be entirely clear

that the intention was by § 42 to make neglect to comply with § 30 relegate both parties to their common-law rights. But the chief inducement to the employee to accept Part B unquestionably is the fact that he thereby secures compensation for injuries for which the common law gives him no remedy. It is too unreasonable to believe that the legislature intended that the employer, after having accepted Part B, should be able to deprive the employee of these benefits, without notice, by simply neglecting to comply with the provisions of the Act which he had accepted. It is consistent with the language of § 42 to hold that failure by the employer to comply with § 30 deprives the employer of his benefits under Part B, but does not deprive the employee of his benefits under it, and that the latter, in such case, may claim compensation under the Act, or, in a case in which the common law gives a remedy, may have his action at common law as modified by Part A. This we think is the proper construction to be given to this section. It follows that compensation was properly awarded to the claimant.

Counsel for the respondent, who appealed to the Superior Court, has called our attention to the fact that the clerk of this court exacted from him the record fee required by General Statutes, § 787, to be prepaid before a case appealed or reserved shall be entered upon the docket of this court, and requests a ruling whether such exaction was proper. It is claimed that as the spirit of the compensation law is to abolish litigation, make the employment of attorneys unnecessary, and effect costless, speedy and certain settlements, it is within the intent of the legislature that this record fee shall not be exacted. It is true that when Part B has been accepted the State assumes the burden of keeping a record of the acceptances and withdrawals of acceptances, and provides means, through the compensation commissioner,

for a speedy and almost costless determination of the question and amount of compensation. But it does not assume all the cost of the proceeding for compensation. It is expressly provided that the cost of witnesses shall be paid by the party in whose behalf they are summoned. There is no provision that the costs of either party shall be taxed in favor of the prevailing party. The costs are to lie where they fall. Each party is to pay his own.

There is nothing to suggest that on an appeal from the commissioner's award the ordinary record fees are not to be paid by the appellant who takes the case to the court. The clerk, therefore, properly exacted the payment of the record fee in question.

The Superior Court is advised to dismiss the appeal.

In this opinion the other judges concurred.