PELTON & KING, INCORPORATED, *vs*. THE TOWN OF BETHLEHEM.

First Judicial District, Hartford, May Term, 1929.

WHEELER, C. J., MALTBIE, HAINES, HINMAN AND BANKS, JS.

Argued May 14th—decided July 25th, 1929.

*Thomas C. Flood,* for the plaintiff.

*James M. Lynch* and *J. Gregory Lynch,* with whom were *Abner P. Hayes* and *W. Braxton Dew,* of Wytheville, Virginia, for the appellee (defendant).

HINMAN, J. The advice to be given upon this reservation depends upon the meaning and effect of Chapter 170 of the Public Acts of 1925, which is quoted in a footnote hereto. We are to ascertain the intention

"Any officer or agent contracting in behalf of any town, city or borough, or subdivision thereof, for the construction, alteration, removal or repair of any public building, public road, public sewer or public bridge, shall, if such contract shall exceed the sum of five hundred dollars and the state shall not be a party thereto, require from each contractor, as a condition precedent to the execution of a contract for any such construction, alteration, removal or repair, a bond with sufficient surety, which bond shall be conditioned for the faithful execution of the contract according to its provisions

of the legislature in passing this Act, from the words used, but reading all the parts of the statute together, and having in view the circumstances surrounding the legislature at the time it was passed, and the history and progress of kindred legislation. *Old Saybrook* v. *Public Utilities Commission,* 100 Conn. 322, 328, 124 Atl. 33; *Bayon* v. *Beckley,* 89 Conn. 154, 160, 93 Atl. 139; *New York & N. E. R. Co.'s Appeal from Railroad Commissioners,* 62 Conn. 527, 534, 26 Atl. 122; 36 Cyc. 1136, 1137; 25 R. C. L. 1052. We therefore recur to the situation existing at the time the legislature adopted the original Act on this subject, Public Acts of 1917, Chapter 118 now § 5221 of the General Statutes, which is substantially similar to that now under consideration except that the latter applies to municipalities only, and not to the State, and contains a limitation provision, to be considered at a later stage of this discussion.

In *National Fireproofing Co.* v. *Huntington* (1909) 81 Conn. 632, 71 Atl. 911, we held that a mechanic's lien does not attach to, and cannot be enforced against, the public property of a State, county, or municipality. The authorities are practically unanimous in this view, which is dictated by obvious considerations of public policy, including the undesirability of expos-

---

and for the payment for all materials and labor used or employed in the execution of such contract. Any person, firm or corporation having any claim for materials or labor furnished in the execution of any such contract shall file with the officers or agents contracting for any such construction, alteration, removal or repair, a statement of such claim within sixty days after ceasing to furnish such materials or labor, and such officer or agent shall cause such claim to be paid if he shall find the same to be correct, and the amount thereof shall be recovered with costs from the surety on such bond. The liability of any town, city or borough, or any subdivision thereof, shall not exceed in the whole the amount it agreed to pay such contractor. If the total amount of such claims shall exceed such contract price, then all such claims shall be paid pro rata."

ing instrumentalities for carrying on the functions of the government to liability to appropriation by private persons through foreclosure of such liens. 18 R. C. L. p. 881, § 9; 26 A. L. R. 327.

In *Fenton* v. *Fenton Building Co.* (1915) 90 Conn. 7, 96 Atl. 145, contracts with the State and with a town contained the clause, common in standard form building contracts, that "if at any time there shall be evidence of any lien or claim for which, if established, the owners of the said premises might become liable, and which is chargeable to the contractors, the owners shall have the right to retain out of any payment then due or thereafter to become due an amount sufficient to completely indemnify them against such lien or claim. Should there prove to be any such claim after all payments are made, the contractors shall refund to the owners all moneys that the latter may be compelled to pay in discharging any lien on said premises made obligatory in consequence of the contractors' default." It was held that this provision did not avail to impress moneys withheld by the State and the town, thereunder, with a trust in favor of subcontractors and materialmen who had sought to establish liens for the payment of their claims, in preference to the general creditors of the insolvent building contractor. For the same reason—that public property is not subject to lien—bonds to secure the payment of claims, arising out of a building contract with the State, "which are valid liens against the property of the owner" did not cover claims for labor and materials used in constructing the building. Report of Attorney General, 1915-1916, p. 163.

Therefore laborers and materialmen upon public buildings and works were relegated to recovery from the contractor alone, and exposed to a like difficulty or impossibility of obtaining payment from him which

inspired the enactment of mechanic's lien statutes, but were deprived of the means of obtaining security which was available, under those statutes, to those furnishing labor and materials in construction work for private owners.

To obviate similar difficulties and disadvantages in. other States, statutes or ordinances had been enacted requiring contractors on public works to secure, by bond or otherwise, the payment of all such claims for labor and material. 18 R. C. L. p. 883, § 9; note, 27 L. R. A. (N. S.) 579; 44 Corpus Juris, Municipal Corporations, § 2540, p. 355; 15 Corpus Juris, Counties, § 254, p. 558; 35 Cyc., Schools and School Districts, p. 960. Such a requirement was held to be a proper exercise of legislative power. *Columbia Digger Co.* v. *Rector*, 215 Fed. 618, 632; *Wilson* v. *Whitmore (Webber)* 92 Hun, 466, aff., 157 N. Y. 693, 51 N. E. 1094; *Portland* v. *O'Neill*, 98 Ore. 162, 192 Pac. 909; 4 McQuillin on Municipal Corporations, § 1960. The courts have generally given such statutes a liberal interpretation "with a view of effecting their purpose to require payment to those who have contributed by their labor and material to the erection of buildings." *Hill* v. *American Surety Co.*, 200 U. S. 197, 203, 26 Sup. Ct. 128. These statutes, naturally, disclose considerable· variations in language which are reflected in the construction and effect accorded them by the courts of the several jurisdictions. Limitations upon their scope and efficacy and difficulties in obtaining the benefits intended, which developed under some, have been obviated in later enactments.

In *Friedman* v. *County of Hampden* (1909) 204 Mass. 494, 90 N. E. 851, the contract contained the same clause as is above quoted from *Fenton* v. *Fenton Building Co.*, but, as is pointed out in the latter, the case turned upon a statute (Stat. 1904, Chap. 349)

which was therein held to be similar to and entitled to a similar interpretation as an earlier statute (Stat. 1878, Chap. 209) relating to contracts with the Commonwealth, providing that "when public buildings or other public works are about to be built or repaired . . . by contract, upon which liens might attach for labor or materials if they belonged to private persons, it shall be the duty of the officers or agents contracting . . . to provide sufficient security, by bond or otherwise, for payment by the contractor and all subcontractors for all labor performed or furnished, and all material used in the construction and repair thereof." It was there held, as in *Burr* v. *Massachusetts School for the Feeble Minded,* 197 Mass. 357, 83 N. E. 883, regarding the Act of 1878, that the contract clause for the retention of payments, already quoted, answered the statutory requirement for security "by bond *or otherwise.*" Also, because of the specification in the original statute that the claims to be secured are those *upon which mechanic's liens would attach* if the premises belonged to private persons, resort was had to the general lien laws of the State to determine that the benefit extended not only to a laborer or materialman, but also to a subcontractor of any degree. (p. 507).

A similar application, by reference, of general lien laws, containing a provision such as § 5220 of the General Statutes of Connecticut, would result in the apportionment of liens exceeding in amount the contract price or, as well, the balance remaining unpaid above payments already made, in good faith, before notice of lien.

In other jurisdictions, questions arose as to the manner of obtaining the relief contemplated. In *Merchants & Traders National Bank* v. *City of New York,* 97 N. Y. 355, 362, also referred to in *Fenton* v. *Fenton*

*Building Co.,* it was held that, under a contract containing a retention provision prescribed by ordinance, the city assumed no express liability to pay laborers and materialmen dealing with the contractor, and could not be sued upon such a liability. The recent case of *E. I. Du Pont De Nemours & Co.* v. *Glenwood Springs* (1927) 19 Fed. (2d) 225, 229, states that the cases, therein reviewed including the New York case just cited, "indicate that, in the absence of a statutory requirement that a city pay claims for material furnished to a contractor, or that it withhold funds to insure payment of such claims, no enforceable liability on the part of the city exists therefor."

In Minnesota, where the statute provided that the municipality shall be liable "for any loss sustained by any person furnishing labor and material" under the contract, it was held that, to be entitled to recover, it was necessary for the laborer or materialman to show that the contractor was insolvent and unable to pay. *Fargo Cornice & Ornament Co.* v. *Clay County School District,* 152 Minn. 342, 188 N. W. 733; *Scott-Graff Lumber Co.* v. *Independent School District,* 112 Minn. 474, 128 N. W. 672; *Wilcox Lumber Co.* v. *Otter Tail County School District,* 103 Minn. 43, 114 N. W. 262. Sometimes protection of a bond given pursuant to such a statute has been held to be afforded to the municipality only, by way of indemnity against such claims; in other cases the benefit has been extended to the laborers and materialmen, although not named in the bond as parties. 4 McQuillin on Municipal Corporations, § 1960, pp. 4209, 4210, and cases cited; 44 Corpus Juris, p. 357.

These considerations, especially the then recent decision in *Fenton* v. *Fenton Building Co., supra,* and the Massachusetts statutes and the construction accorded them by the cases cited in the *Fenton* case, are of

significance in construing our statutes on the subject. As we have seen, by expressly requiring security for such claims, only, as would be lienable against a private owner, as in the Massachusetts Act of 1878, the incidents of the general mechanic's lien laws might have been made applicable, as to the classes of persons entitled to benefit, limitation of liability on the part of the owner, and in other respects. Our statutes provide for protection of all claims for labor and materials furnished, without express or implied reference to whether as against a private owner, mechanic's liens might attach therefor. Moreover, the provision for limitation of owner's liability, in some respects resembling, in others inconsistent with, that provided under the mechanic's lien statute (§ 5220), which was inserted in the Act of 1925, affords an additional indication of intended independence from the general lien law.

Again, the limitation of the prescribed security to "bond with sufficient surety," excludes other forms of security, such as the retention clause in the contract which was held to be permissible under the Massachusetts statutes, and the provision for payment to the claimant, by the municipality, and recovery over, by the latter, from the surety on the bond, appears to be calculated to obviate difficulties and uncertainties, in that regard, such as we have mentioned as having arisen elsewhere.

It is clear that the primary purpose of the statute is to protect and benefit those who furnish materials and labor to the contractor on public work, in that they may be assured of payment of their just claims, without defeat or undue delay. It involves an incidental benefit to the municipality, since it contemplates protection to it in the payment of such claims, subject only to the ascertainment of their correctness,

and reimbursement therefor, if the prescribed security is exacted. It suggests no intent to benefit the contractor, but, on the contrary, to afford protection against his defaults and his inability or failure to pay just claims for labor and materials furnished him in the execution of his contract. The above-mentioned purpose is accomplished, as to claimants, by construing the statute as entitling them to direct payment from the municipality, and there is no injustice to the latter provided its aggregate liability on account of such claims is limited to the total contract price. Both the municipality and the surety on the contractor's bond may be safeguarded against excess, above the contract price, of the amount of such claims plus prior payments made to the contractor, by provision and enforcement of contract requirements such as that progress payments be conditioned on proof that labor and material claims have been paid, similarly as was provided in the instant contract as to the final payment, or for retention of an amount or percentage sufficient to cover such claims or for reclamation of payments already made, or both. On the other hand, the prime object of the law would be nullified by a construction of the provision contained in the last two sentences of the Act of 1925 as limiting claimants to resort to such balance only as remains above prior payments made to the principal contractor, and, further, no purpose would be served by the requirement of security for payment of labor and material claims, and for recovery of reimbursement from the surety for such. As the defendant concedes in its brief (p. 6): "It is obvious that if the public body uses only the surplus funds for the payment of material and labor bills, it has suffered no loss and needs no reimbursement from the surety." Such a construction is not compelled, or warranted, if these sentences are read together and,

as they must be, with the other provisions of the Act, which, as we have seen, does not concern, either expressly or by implied reference to the lien laws, payments made to the contractor, but only claims of the specified class. It is as to "such claims" that the municipality's "liability" is limited by the Act, to a total not exceeding the contract price; payments made to the contractor are not to be included in computing this total.

The criticism that, thereby, claims of this class under public contracts are accorded a more advantageous position than similar claims to which the mechanic's lien laws are applicable is appropriate for consideration by the legislature, but cannot control the construction of the statute as it stands. Compliance with the Act, as we construe it, does not involve a violation of Article XXIV of the Amendments to the Constitution, or of § 58 of the General Statutes.

The defendant concedes that the plaintiff and other claimants similarly situated may assert their rights, under the statute, against the defendant, which in turn may seek reimbursement from the surety on the bond. We have no occasion, on this record, to consider whether claimants under this statute may also have a right of action against the surety, under *Baurer* v. *Devenis,* 99 Conn. 203, 121 Atl. 566, or otherwise, nor are we called upon to determine the sufficiency of the bond given in the present instance to afford recovery by the defendant of the amount of claims paid by the town.

Our answer to the first question is Yes, provided statement of claim was filed in conformity to the statute, and provided, further, that the total amount of such claims does not exceed $23,500, the contract price. To the second question we answer Yes. As to the third, our construction of the limitation clause is as

above set forth. Under question fourth, we advise that payments by the town must be made before, and irrespective of, recovery from the surety on the bond.

In this opinion HAINES and BANKS, Js., concurred; WHEELER, C. J., and MALTBIE, J., dissented.