## MASANO HONDA *v.* KAME HIGA.

## No. 2196.

SUBMITTED AUGUST 22, 1935.          DECIDED OCTOBER 17, 1935.

COKE, C. J., BANKS AND PETERS, JJ.

OPINION OF THE COURT BY COKE, C. J.

(Banks, J., dissenting.)

This is a writ of error to review the judgment of the circuit court of the first circuit denying compensation to an employee under the Workmen's Compensation Act.

The facts are simple and undisputed. The plaintiff in error, a waitress in a restaurant, was instructed by her employer to get some cigarettes from a dealer about a block distant. Having been detained in the performance of her duties until about the closing time of the cigarette dealer she enlisted the assistance of a customer to convey her on the latter's motorcycle to the cigarette dealer's place of business and while in transit the motorcycle skidded and the plaintiff in error was thrown to the ground, sustaining injuries. Plaintiff in error describes the operator of the motorcycle as "a guy from Pearl Harbor," "a sailor" whom she knew by sight only and who had come into her place of employment to drink beer. Part of the duties of the plaintiff in error as waitress was to check the restaurant's stock of merchandise including cigarettes. She had previously upon numerous occasions, averaging about three or four times a week, gone on similar errands to the cigarette dealer's place of business, but always on foot.

Plaintiff in error's claim for compensation is based upon the provisions of section 3604, R. L. 1925, which provides: "If a workman receive personal injury by accident arising out of and in the course of the employment or by disease proximately caused by the employment, or resulting from the nature of the employment, his employer or the insurance carrier shall pay compensation in the amounts and to the person or persons hereinafter specified." The industrial accident board granted compen-

sation. Upon appeal to the circuit court by the employer it was stipulated that the cause be submitted upon the same evidence adduced before the industrial accident board. No jury trial was demanded.

The circuit judge who presided upon the trial held in effect that the injuries which the claimant suffered did not arise out of her employment for the reason that there was no causal connection between the course of her employment and the resulting injury, riding upon the rear seat of a motorcycle for the purpose of going a block after cigarettes being a risk not connected with nor reasonably incidental to her work as a waitress in the restaurant of her employer.

This court, in the case of *Wong Chee* v. *Yee Wo Chan,* 26 Haw. 785, held that for an accident to arise out of employment there must be reasonably apparent a causal connection between the conditions under which the work is required to be performed and the resulting injury, that is, the injury must reasonably appear to have had its origin in a risk connected with or reasonably incidental to the work and to have flowed from that source as a rational consequence thereof. An exception to this general rule arises where a workman for the protection of his employer's interest acts in an emergency. (*Spooner* v. *Detroit Saturday Night Co.,* 153 N. W. [Mich.] 657, 660.) But manifestly no emergency was shown to exist in the present case.

It is undisputed that the claimant had been instructed by her employer to go to the cigarette dealer and purchase cigarettes. Hence no one will challenge the conclusion that in going to the cigarette dealer to purchase cigarettes the claimant was acting in the course of her employment. Moreover, had the claimant been authorized or permitted by her employer to avail herself of the use of the customer's motorcycle in going to and returning from the place

of business of the cigarette dealer and she was injured en route there would be a causal connection between the conditions under which the errand she was required to perform and the resulting injury and the injury would reasonably appear to have its origin in a risk connected with or reasonably incidental to the errand she was instructed to make and to have flowed from that source as a rational consequence thereof.

In the *Wong Chee* case there appeared express authority to go upon the errand in the course of which the accident occurred and permission was implied to use an automobile to go upon the errand from the fact that the employee had been provided by his employer with an automobile with which to perform his work.

Side by side with the *Wong Chee* case we find the decision of the King's Bench in *Pierce* v. *Provident Clothing & Supply Co.* (1911), 1 K. B. 997, where it was held that a collector and canvasser to an industrial company, whilst riding a bicycle in the course of his employment, was knocked down and killed by a tramcar, and the fact that he used a bicycle for the purposes of employment was known to and not forbidden by the company. Compensation was properly awarded to his dependents. In the latter case Lord Justice Moulton says: "I think that this case is concluded by the finding of the learned county court judge that this was a permitted mode of locomotion. It was known to and not forbidden by his employers; it was permitted although it was not directed. That being so, we can draw no distinction between that and any other permitted mode of locomotion. A man who in the course of his employment has to get about the streets may do so on foot or in a tramcar or in a carriage or motor car or on a bicycle. Each of them has its own risks and each is free from some of the risks which affect the others. We have not to balance these risks one against the other. So soon

as it is clear that this mode of locomotion is permitted by the master the workman in adopting it is acting within the scope of his employment." Many additional authorities to the same effect could be cited. But in the present case there is no evidence whatsoever which would support even an inference that the employer of claimant permitted the latter to depart from her usual method of travel between the restaurant and the cigarette store and adopt a means of transit which entailed additional and unusual risk and danger. Indeed, there is no evidence indicating that the employer had any knowledge of the intention or purpose of the injured claimant to adopt this unusual mode of transportation. The circuit judge found, upon the undisputed evidence submitted to him, "that about 7 P. M. the proprietress had told the plaintiff to go get some cigarettes for the restaurant; she had gone on such errands previously but had always walked. It does not appear from the evidence that the proprietress consented to or knew of the proposed method of traveling one block to get a carton of cigarettes." And again the trial court said: "A waitress departs from the scope of her employment when she climbs upon the rear seat of a motorcycle of a drinking customer for the purpose of going a block after cigarettes, particularly when it does not appear that such method of travel has ever been known to or authorized by the employer, nor is an injury to such waitress resulting from the collision while so riding tandem on a motorcycle a risk connected with or reasonably incidental to her work in a restaurant." These findings were clearly supported by the evidence.

If in fact the employer permitted, either expressly or by implication, the use of a motorcycle by the injured claimant, or, prior to the accident, had knowledge that the claimant contemplated the use of the motorcycle to perform the errand the burden was upon the claimant to

establish these facts by evidence. "The burden of proof rests upon the applicant to establish all the facts necessary to entitle him to compensation under the Workmen's Compensation Act. Factors necessary to support the claim cannot be left to surmise, conjecture, guess or speculation." *Wong Chee* v. *Yee Wo Chan, supra.*

In the case under review there is no evidence of any express agreement between the employer and the claimant as to what means of travel the latter should employ upon errands to the cigarette dealer's place of business when purchasing cigarettes. But the absence of such evidence does not *per se* admit of the inference that in the performance of her duties the choice of method of travel was left to the reasonable discretion of the claimant. Where the right of recovery by the servant against the master depends in part upon the claim of possession by the former of discretion in the former in the choice of instrumentalities with which to perform the duties of his employment, such discretion similarly as all other facts material to the recovery must be established by the servant by competent and material evidence directly or indirectly tending to prove the possession of such discretion.

More often than otherwise contracts of employment fail to contain or include express provisions in respect to the means of travel to be used by the employee in the performance of the duties of his employment. And when such is the case courts have resorted to the character and incidents of the employment and whatever has been uniformly done in the execution of the contract by both parties to it to ascertain what means of travel the servant in the performance of his duties was permitted, required or expected to use. *(Hewitt* v. *Casualty Co. of America,* 113 N. E. [Mass.] 572, 573; *Branch* v. *Skinner Bros. Mfg. Co.,* 51 S. W. [2d] 27, 29; *Ind. Comm.* v. *Aetna Life Ins.* Co., 174 Pac. [Colo.] 589, 591; *Kunze* v. *Detroit Shade Tree Co.,*

158 N. W. [Mich.] 851, 852; *London & Lancashire Indemnity Co.* v. *I. A. Comm.*, 170 Pac. [Cal.] 1074.)

In the instant case the character and incidents of the employment and what had been uniformly done in the execution of the contract by both of the parties to it support the finding of the trial court that the use by the claimant of a motorcycle in the performance of the duties of her employment in going upon errands to the cigarette dealer's place of business when purchasing cigarettes was not known or consented to by the employer. The errands were mere incidents to the main occupation of the claimant as a waitress. The distance to be traversed was but a "block." This court takes judicial notice that the length of an ordinary city block in the vicinity of the place of the claimant's employment is in the neighborhood of two hundred to three hundred feet. There is no evidence that the employer provided the claimant with a motorcycle or any other means of conveyance or provided her with funds to secure public conveyance. Moreover, it affirmatively appears that the claimant had upon previous occasions of going upon the same errand always gone afoot. This she had done on an average of three or four times a week, and from the length of her employment and the number of times she had gone upon similar errands it may be reasonably inferred that her employer was cognizant of that method of travel. Even in the absence of such an inference and any evidence on the subject we would unhesitatingly hold that the usual, normal and customary method of going on errands but a few hundred feet along the street is by foot and not by passage over housetops, by aircraft, automobile, motorcycle or other unusual means of traversing so short a distance. Nothing appears in the record before us which would justify even an inference that the employer requested, permitted or expected the claimant to employ or make use of the unusual means of transit which was adopted by the latter in the present case.

It is apparent that the accident arose from peril added to by the conduct of claimant. Courts have uniformly held that an injury sustained by a workman entering or leaving the place of employment while using a more hazardous route than ordinarily used or by subjecting himself to an unusual or unnecessary danger does not arise out of his employment. This rule is referred to and adopted in *Moore & Scott Iron Works* v. *Industrial Accident Commission*, 172 Pac. (Cal.) 1114,—a case where a bolter-up who was in the hull of a ship in the course of construction, leaving his employment for the purpose of going to lunch, undertook to go down a scaffolding and ladder on the outside of the ship although there was another safe method provided for exit from the vessel. In the California case, as here, there was no evidence tending to show that the employer ever instructed the employee as to what exit from the ship should be used. The California court, however, refused to be impressed by the argument that the employee's injuries arose out of his employment.

An interesting case supporting our position herein is that of *Inland Steel Co.* v. *Lambert*, 118 N. E. (Ind.) 162. It is the more valuable for the quotation from the opinion of Lord Atkinson in the case of *Barnes* v. *Nunnery Colliery Co.*, 5 B. W. C. C. 195 (not in the local library), where his Lordship gives the following illustration distinguishing between the negligent doing of a thing which a workman is employed to do and the doing of a thing not reasonably incidental to the employment: "For example, if a master employs a servant to carry his (the master's) letters on foot across the fields on a beaten path, or on foot by road to a neighboring post office, and the servant, having got the letters, went to the stables, mounted his master's horse, and proceeded to ride across country to the post office, was thrown and killed, or went to his master's garage, took out his motor car, and proceeded to drive by

road to the post office, came in collision with something, and was killed, it could not be held, I think, according to reason or law, that the injury to the servant arose out of his employment, although in one sense he was about to do ultimately the thing he was employed to do, namely, to bring his master's letters to the post."

It is further held in the *Wong Chee* opinion that the provisions of the Workmen's Compensation Act should receive a broad construction at the hands of the courts in order that the benefits and purposes thereof may be extended to all proper cases. Yet by no liberality of construction may an employee, who without the knowledge or consent, express or implied, of his employer subjects himself to hazards or dangers not required by nor incident to his employment, be permitted to avail himself of the benefits of the Act, nor may the courts abrogate the fundamental rule of law which casts upon a claimant the burden of establishing all facts necessary to entitle him to compensation.

In the present case there was a complete failure of proof, proving or tending to prove that the injury to claimant arose out of her employment.

The judgment of the lower court is affirmed.

*E. J. Botts* for plaintiff in error.

*Kemp & Stainback* for defendant in error.

### DISSENTING OPINION OF BANKS, J.

If it appeared from the testimony in the instant case that the employer had instructed the employee to walk when she was required to go from the restaurant to Ah Leong's store for the purpose of getting cigarettes, that instruction would have become one of the terms of the employment contract. Under these circumstances, that condition of employment having been accepted and then disregarded, it might be argued that the injury to the em-

ployee arose, not out of her employment but out of a violation of one of its provisions. But that is not this case. There is not a scintilla of evidence to show that the employer ever gave the employee any instructions as to how she should traverse the distance between the restaurant and Ah Leong's store. Nor is there any evidence of an expressed or implied prohibition against the use of any particular means of locomotion. The conclusion therefore is obvious that in the performance of that duty the method of accomplishing it was left to the reasonable discretion of the employee.

In *Carey* v. *Honolulu Iron Works,* 30 Haw. 457, 459, it was held that when an employee is not instructed as to what route he should take in returning an automobile truck to his employer's garage after finishing his daily work the implication is that the choice is left to the employee.

In the *Kunze* case (158 N. W. 851), cited by the majority, the injured employee was hired by the defendant company as a tree trimmer and planter. He was required to go from place to place in the performance of his duties. On the day of the injury he had left one job and while en route to board a car which was to take him to another job was struck by an automobile. The court held that the injury arose out of his employment. There were no prohibitions or directions as to the means of travel to be adopted by the employee while going from one job to another. In these circumstances the court concluded that the means of transportation were left to the choice of the employee, saying (p. 852) : "We think it is clear from the record that the employment of the deceased was to go from place to place to trim trees, and that in the discharge of these duties it was not only necessary for him to supervise the work, but it was necessary, in the course of his employment, to proceed from one job to the other, adopting such means of locomotion as he might desire."

On this same point it is said in *State ex rel. Duluth Brewing & M. Co.* v. *District Court,* 129 Minn. 176, 179-180: "He [the employee] had never been told that the light bulbs were to be under lock as to him who was charged with the duty of seeing that the broken and defective ones were replaced. He had a variety of matters to attend to in which he, like servants generally, had to rely on the promptings of his own judgment as to details. Undesirable, indifferent, and of little value indeed are the services of an employee who must be expressly directed as to the time, manner and extent of doing each particular task." (A statement of the facts in this case appears later in the opinion.)

Likewise, in the instant case, the employee was required under her employment to get cigarettes, but no directions were given to her as to how she was to accomplish that duty nor were any prohibitions made against any particular means of travel.

The thesis of the majority is stated in the following language: "It is apparent that the accident arose from peril added to by the conduct of claimant. Courts have uniformly held that an injury sustained by a workman entering or leaving the place of employment while using a more hazardous route than ordinarily used or by subjecting himself to an unusual or unnecessary danger does not arise out of his employment."

I am of the opinion that if the employee in the instant case, in the exercise of her discretion, had chosen means that were inherently dangerous it might be argued that such means were so completely outside the contemplation of the parties that the resulting injury did not arise out of the employment. In my opinion this also is not the case now before the court. It seems to me it must be conceded that riding on a motorcycle is not in and of itself an inherently dangerous method of travel. If that were

not so the operation of motorcycles on the public streets instead of being permitted, as it is, would be prohibited as a public nuisance.

In support of their theory the majority rely on the *Moore & Scott Iron Works* case, the *Inland Steel Company* case and Lord Atkinson's illustration in the *Barnes* case, which is quoted in the *Inland Steel Company* case.

In the *Iron Works* case (36 Cal. App. 582) a safe means of exit was provided by the employer. The court found that the scaffolding and ladder on the outside of the ship, which were used by the injured employee, were "a means not intended for his use in leaving the ship at any time—another and perfectly safe method of exit having been provided by his employers." It is also significant that the court considered that when the employee left his work to go to lunch before the hour when he was permitted to leave it he had abandoned his employment. An injury occurring during such an abandonment, clearly, I think, does not arise out of the employment. In the instant case no means were provided the employee by which to get the cigarettes. The means of getting to the store were left to her own judgment and there was no abandonment of her employment.

In the *Steel Co.* case (118 N. E. 162) the employee, who was a switchman, was injured when he attempted to board a moving locomotive. The locomotive was going in the direction of the employer's plant where the employee was required to check out at the end of his day's work. The court held that the injury did not arise out of his employment, principally because the employee (p. 166) "attempted unnecessarily to do a perilous act, not reasonably incident to his employment." Such a fact is not present in the case at bar, for as I have already stated the mere riding on a motorcycle is not in and of itself a perilous act.

In the *Barnes* case the very language of Lord Atkinson distinguishes that case from ours. There the servant, employed to go on foot, violated the provisions of his employment. Here the employee was not directed nor employed to walk when purchasing cigarettes and therefore there was no violation of any of the terms of her employment.

I believe the application of the principle adopted by the majority is a narrow one and I am supported in this belief by *State ex rel. Duluth Brewing & M. Co. v. District Court, supra,* and *Clem v. Chalmers Motor Co.,* 178 Mich. 340. These are cases in which the employees adopted unusual methods in the performance of their duties and were injured thereby. And yet both the Minnesota and Michigan courts held that the injuries arose out of the employment.

In the Minnesota case the injured servant, Charles De-Cook, had worked for the brewing company as the foreman's helper for more than five years prior to the accident. One of DeCook's duties was to replace all broken or defective electric light bulbs. To protect these bulbs against breakage and from being stolen the company had them screened and locked. In making replacements De-Cook was required to get the key from the foreman, unlock the screen, take the broken or defective bulb to the foreman, replace said bulb, lock the screen and return the key to the foreman. On the day of the injury another employee gave DeCook an apparently empty cartridge shell. The latter believed he could fashion a key from the shell and thus save time and energy in making bulb replacements. The shell proved to be a loaded dynamite cap which exploded under DeCook's hammering, piercing his right eye and destroying the sight. In granting compensation the court said (pp. 179, 180) : "We shall not attempt to formulate a definition of the phrase, acciden-

tal injury arising out of the employment, except to say that the accident causing the injury must arise out of work or business being done for the master either by direct or implied authority. The trial court evidently took the view that DeCook in good faith believed he was furthering his master's business, and performing an act which he might reasonably be expected to do when he undertook to supply himself with a key. He had never been told that the light bulbs were to be under lock as to him who was charged with the duty of seeing that the broken and defective ones were replaced. He had a variety of matters to attend to in which he, like servants generally, had to rely on the promptings of his own judgment as to details. Undesirable, indifferent, and of little value indeed are the services of an employee who must be expressly directed as to the time, manner and extent of doing each particular task. Hence, when a servant undertakes in the course of his employment, during the proper hours therefor, and in the proper place to do something in furtherance of his master's business, and meets with accidental injury therein, the trial court's finding, that the accident arose out of and in the course of employment, should not be disturbed, unless it is clear to us that the ordinary servant, in the same situation, would have no reasonable justification for believing that what he undertook to do when injured was within the scope of his implied duties. If another servant duly engaged in the master's work had had his sight destroyed, instead of DeCook, in this accident the thought would have been almost irresistible that this law was meant to cover such injury. But, upon the facts in this case, we doubt whether DeCook should occupy a less favorable position. If the attempt to make a key was reasonable within the scope of his employment, the fact that, from ignorance or error of judgment, he made use of dangerous material, not provided by the master, should not

necessarily exclude the conclusion that the injury arose out of the employment. The term cannot be restricted to injuries caused from anticipated risks of the service if the law is to be of the benefit intended."

In the Michigan case Charles Clem was employed by the defendant motor company as a carpenter. In order to add to the comfort and efficiency of the workers the company provided lunches which were served during the forenoon. On the day of the accident Clem and other employees were working on the roof of a building about twenty feet high. Between nine and ten o'clock the men were called by a subforeman to come down for lunch. A ladder attached to the side of the building was used by the employees in going to and from the roof. In going for their lunch all the workmen, except Clem and two others, descended by the ladder. Clem attempted to go down by a rope, the end of which was from about five to seven feet from the ground. He fell and was hurt, receiving injuries which resulted in his death. In allowing recovery the court said (p. 345) : "If, when the call to come to lunch was made, Mr. Clem, in responding to the call, had inadvertently stepped into an opening in the uncompleted roof or in company with the others had, in the attempt to reach the ladder, got too near the edge of the roof and fallen and been hurt, would it be claimed that the injury did not arise out of and in the course of his employment? The getting his luncheon under the conditions shown was just as much a part of his duty as the laying of a board or the spreading of the roofing material."

It is clear that in the Minnesota and Michigan cases the employees had by their own conduct added to whatever perils were connected with their employment, but more important, it seems to me, is the fact that both employees, in performing their duties, employed unusual and dangerous methods. If compensation should be granted

in those cases it certainly should not be denied in this case, where the employee merely rode on an apparently safe motorcycle, especially in view of the testimony which shows that the waitress-employee had been busy in the restaurant up to nearly eight o'clock, that it was late and that she knew Ah Leong's store closed at eight o'clock. It makes no difference in the instant case that the employee, who had gone to Ah Leong's store on several previous occasions for the purpose of obtaining cigarettes, habitually walked.

Such is the effect of *Bayon* v. *Beckley*, 89 Conn. 154. The supreme court of Connecticut had before it questions of law which are not present in the instant case and necessarily its statement of the facts is incomplete. I have therefore had recourse to Bradbury's Workmen's Compensation (3d ed.), where the facts in the *Bayon* case are stated as follows (p. 629) : "A woman employed to clean house once a week was shaking a rug from a porch, in an unusual place, and while leaning against the porch railing she fell to the ground and was seriously injured. It was held that the accident arose out of the employment, even though this was an unusual place in which to clean the rugs and she had previously performed this work either in the yard or under a covered porch at another part of the house. *Bayon* v. *Beckley*, 1 Conn. Comp. Dec. 69; aff'd 89 Conn. 154; 8 N. C. C. A. 588." Compensation was granted by the compensation commissioner and an appeal taken to the superior court which reserved the case to the supreme court. The latter tribunal dismissed the appeal. In stating the facts the supreme court said that the injury arose out of the employment, the effect of which leads me to say that a change by an employee from the customary manner of performing his duties proves no obstacle in granting compensation.

Several cases are cited by the majority in following

the rule that in the absence of express provisions in the employment contract as to methods of travel, courts have, in determining what means the employee was permitted, required and expected to use, looked to the character and incidents of the employment and what the contracting parties have uniformly done in the execution of the contract. In the cited cases the courts do not expressly state that that is the rule which they have adopted and upon which the decisions are based. But assuming that the principle announced by the majority was in the minds of the judges sitting in the cited cases, nevertheless the character and incidents of this employment (the purchasing of cigarettes) did not prohibit the use of a car, bicycle or motorcycle in carrying out the employee's duty. As already stated, in the absence of instructions as to the means by which the employment is to be accomplished, there is left to the employee the exercise of a reasonable discretion in her choice of travel. Nor were the parties in agreement that walking was the exclusive mode of locomotion. The majority are of the opinion that because she had gone afoot on the same errand on an average of three or four times a week during the length of her employment, which was about three months, it may be inferred that the employer knew of this method of travel. I think this inference is not fair or reasonable. It is quite possible in many instances that an employer would have no knowledge of the method adopted by his employee in accomplishing his duties even though the employee had, upon numerous occasions, and for a long period of time, used the same method. In the instant case the employer, so far as the evidence shows, had no knowledge that her employee habitually walked and therefore it cannot be assumed that by mutual assent this method of travel became a part of the contract of employment. Therefore in the absence of instructions to the employee to use this specific method and

in the absence of a prohibition against any other method, the discretion of the employee either to continue it or to choose some other reasonably safe means remains unaffected.

The only principle of law upon which the conclusion of the court could have been reached is that any deviation by an employee from his accustomed method of performing his duties of employment, whether he was instructed as to such methods or not, and regardless of the nature of the deviation, takes him out of the protection of the Workmen's Compensation Act. This doctrine seems to me to be fraught with serious consequences and I believe it to be contrary to the rule laid down by this court and other courts requiring a liberal construction of the Act in order to accomplish its beneficent purposes.

As was said in *Industrial Commission* v. *Aetna Life Insurance Co.*, 174 Pac. 589, 591 (cited by the majority): "Our courts are in agreement that these acts should be broadly and liberally construed, to the end that their beneficent intent and purpose may be reasonably accomplished. Upon this point it was said in *Zappala* v. *Industrial Ins. Comn.*, 82 Wash. 314, 144 Pac. 54, L.R.A. 1916A, 295: 'In construing the language of the act, we must have in mind the evident purpose and intent of the act to provide compensation for workmen injured in hazardous undertakings reaching "every injury sustained by a workman engaged in any such industry; and make a sure and certain award therefor, bearing a just proportion to the loss sustained, regardless of the manner in which the injury was received." *State ex rel. Davis-Smith Co.* v. *Clausen*, 65 Wash. 156, 117 Pac. 1101, 37 L. R. A. (N.S.) 466, and that the act should be liberally interpreted, to the end that the purpose of the legislature in suppressing the mischief and advancing the remedy be promoted *even to the inclusion of cases within the reason although outside the letter*

*of the statute,* and that every hazardous industry within the purview of the act should bear the burden arising out of injuries to its employees regardless of the cause of the injury. *Peet* v. *Mills,* 76 Wash. 437, 136 Pac. 685 [L.R.A. 1916A, 358, Ann. Cas. 1915D, 154].' "

For the foregoing reasons I respectfully dissent from the opinion of the court.