WILLIAM S. LONG, Plaintiff, v. FLORENCE H. N. FERRIS et al., Defendants.

City Court of the City of New York, Special Term, New York County, October 28, 1949.

*Myron Engelman* for Glens Falls Indemnity Co., defendant.

*Wait, Wilson & Newton* for plaintiff.

BYRNES, Ch. J. The defendant Glens Falls Indemnity Company has moved under rule 107 of the Rules of Civil Practice to dismiss the complaint against it, and, more particularly, the fourth alleged cause of action.

The case arises out of a public construction contract made and performed in the State of Connecticut. The plaintiff furnished materials used in such construction to a subcontractor, the defendant Ferris; the general contractor was the defendant Great Atlantic Construction Corporation.

It is alleged in the complaint that the moving defendant Glens Falls Indemnity Company, as surety, executed and delivered to the State Highway Department of the State of Connecticut a performance bond conditioned upon the performance by the said general contractor of all the terms and conditions of its contract. This performance bond was an indemnity bond, and the contention of the plaintiff that it inured to the plaintiff's benefit must be rejected at the outset. The performance bond was not written for the benefit of persons who furnished labor or materials in the prosecution of the work provided in the contract. That bond had no purpose other than to indemnify the State of Connecticut against losses that it might sustain by reason of the general contractor's failure to complete performance of its contract. It made no reference (as the form of bond submitted on this motion shows) either directly or by implication to creditors of the contractor or any subcontractor,

and no intention to benefit such creditors may be inferred from the terms of the bond. The only condition stated in that obligation was the following: " Now, therefore, if the said Principal shall well and truly keep, perform and execute all the terms, conditions and stipulations of said contract according to its provisions on its/his part to be kept and performed, and shall indemnify the Obligee for all loss that the Obligee may sustain by reason of the Principal's failure to comply with said terms, conditions and stipulations, then this obligation shall be null and void, otherwise it shall remain and be in full force and effect." There were no provisions in the bond inuring to the benefit of laborers or materialmen or other creditors of the contractor or subcontractor. Insofar as the performance bond is concerned, the case is therefore unlike *McClare* v. *Massachusetts Bonding & Ins. Co.* (266 N. Y. 371).

However, the defendant surety company also wrote a payment bond, which was plainly intended for the benefit of persons such as this plaintiff, who furnished materials or labor used or employed in the execution of the contract. The important question, therefore, is whether an action may be maintained in this court which is based upon the payment bond. The motion to dismiss is grounded upon the moving defendant's contention that this court lacks jurisdiction of the subject matter of such an action.

The payment bond is a statutory obligation; that is, it was given pursuant to, and because it was required by, the statutes of Connecticut (Conn. Gen. Stat. [1941 Supp. to 1930 Revision], ch. 274, §§ 694f, 695f, 696f; now Conn. Gen. Stat. [1949 Revision], ch. 362, §§ 7214, 7215, 7216). The statute is referred to in the bond; the condition of that obligation reads as follows: " Now, Therefore, If the said Principal shall well and faithfully make payment for all materials and labor used or employed in the execution of such contract, to the extent required by Chapter 274 (Sections 694F, 695F and 696F) of the 1941 Supplement to the General Statutes, then this obligation shall be null and void, otherwise it shall remain and be in full force and effect."

It has been held in the highest court of Connecticut that such a bond and the statute which required it must be construed together and that " the liability of the surety under the bond is coterminous with the statute ", and not greater (*New Britain Lumber Co.* v. *American Surety Co. of New York,* 113 Conn. 1, 7). In that case it was held that the provision of the statute which required the filing by a materialman of a statement of

claim within sixty days after ceasing to furnish materials, as a condition precedent to recovery — although it was not expressly stated or repeated in the bond — was nevertheless to be regarded as one of its terms, as " the parties are deemed to have had the law in contemplation when the contract was executed." The court said: " Where a statutory bond is given, the provisions of the statute will be read into the bond ". (P. 5.) To the same effect is *Graybar Electric Co.* v. *New Amsterdam Cas. Co.* (292 N. Y. 246, 251), in which the court, referring to a performance bond given under the laws of Tennessee, said: " Inasmuch as the bond in suit was given pursuant to this statute, the statutory text is to be read into the instrument."

The Connecticut statute requiring a payment bond for the protection of laborers and materialmen in the case of public construction work was enacted to furnish such laborers and materialmen with protection analogous to that afforded to laborers and materialmen, in the case of private construction work, by the mechanic's lien statute of the State. The laws of Connecticut do not permit laborers or materialmen to file a mechanic's lien against the public property of a State, county or municipality. " Consequently laborers and materialmen upon public buildings were, prior to this legislation, relegated to recovery from the contractor alone, and were deprived of the means of obtaining security which were available, under mechanic's lien statutes, to those furnishing labor and materials in construction work for private owners. We said in *Pelton & King, Inc.,* v. *Bethlehem* (109 Conn. 547; 147 Atl. 144), that the primary purpose of the statute was to protect and benefit those who furnish materials and labor to the contractor on public work, in that they may be assured of payment of their just claims, without defeat or undue delay. The purpose of our mechanic's lien statute is to protect those who furnish labor and material in construction work for private owners. The purpose of this statute being to furnish such protection in the case of construction work upon public buildings, a legislative intent to furnish protection as complete and extensive as in the case of private work may fairly be inferred." (*New Britain Lumber Co.* v. *American Surety Co.,* 113 Conn. 1, 9, *supra,* dissenting opinion of BANKS, J.) Although the foregoing statement is taken from a dissenting opinion in the *New Britain Lumber Co.* case, it fairly indicates the purpose and intent of the statute under consideration here and the reason for its existence. In the grouping of the General Statutes of Con-

necticut, Revision of 1949, the aforesaid sections 7214, 7215 and 7216 are to be found in chapter 362, which bears the heading " Liens "; and in the 1941 Supplement to the General Statutes of Connecticut, the aforesaid sections 694f, 695f and 696f were to be found under title LIII, " Mortgages and Liens ". The significance of all this is that a statutory scheme has been arranged by the laws of Connecticut for the furnishing of security to those whose labor and materials are utilized in construction contracts: in the case of private construction, by a mechanic's lien; and in the case of public construction, by a surety bond. In the light of this statutory scheme it is understandable that a cause of action upon such a surety bond, like an action to foreclose a mechanic's lien, is local; and that the payment bond, like the mechanic's lien, was intended to be enforced locally. This, I think, is the meaning, significance and purpose of the following statutory provision found in the aforesaid section 7215 (formerly Conn. Gen. Stat. [1941 Supp. to 1930 Revision], ch. 274, § 695f) : " Every suit instituted under this section shall be brought in the name of the person suing, in the superior court for the county where the contract was to be performed, irrespective of the amount in controversy in such suit, but no such suit shall be commenced after the expiration of one year after the date of final settlement of such contract."

*People* v. *Metropolitan Surety Co.* (211 N. Y. 107) is of significance in this connection. In that case the court dealt with a payment bond given under the laws of the United States to secure creditors of one who had contracted with the United States to construct public buildings. The statute pursuant to which the bond was given provided that laborers and materialmen " shall have a right of action, and shall be, and are hereby authorized, to bring suit in the name of the United States in the Circuit Court of the United States in the district in which said contract was to be performed and executed, irrespective of the amount in controversy in such suit, and not elsewhere, for his or their use and benefit, against said contractor and his sureties * * * ". The following from the opinion of COLLIN, J., is of immediate application to the case at bar: " The statute requiring and prescribing the substance and conditions of the bond is as perfectly binding on the principal and surety as if it had been set forth in the bond in its very words. (*McCracken* v. *Hayward,* 2 How. [U. S.] 608.) The bond, conforming to the statute, imposed only such obligations as the statute permits. The statute is in a sense a recognition by Congress of the

inability of persons supplying contractors for public works with labor and materials to take liens upon the public property of the United States and a substitute for a mechanic's lien law." (Pp. 113–114.)

The court held that the right of action " was created by the bond and the statute, and must be enforced pursuant to the terms and conditions of the statute and not otherwise " (p. 114) and said further: " It was, however, a qualified and conditional and not an absolute right or cause of action. An act of Congress, which at the same time and in itself authorizes or creates a new cause of action and prescribes the limitations thereof and of its enforcement, makes those limitations conditions of the liability itself. Such an act is not a statute of limitations, and a compliance with the conditions which it prescribes is indispensable to the enforcement of the right it creates, because they are parts of or elements in the right itself and not limitations of the remedy only. The limitation of the remedy is a limitation to the right." (Pp. 114–115.)

In a dissenting opinion (the court divided four to three in this case) MILLER, J., agreed that, in view of the said Federal statute, a court of New York would not have jurisdiction to entertain a suit on such a bond, but he was of the opinion that, as the surety was insolvent and its assets were *in custodia legis,* the New York court, having custody, could determine rights deriving from the bond and distribute the fund accordingly. He said: " While the Supreme Court of this state has no jurisdiction to entertain a suit on a bond given pursuant to the Federal statute, it does have jurisdiction to determine the rights and obligations arising on such bond when incidentally brought in question in a suit of which it has jurisdiction, especially when it is necessary to determine those rights and obligations in order to distribute a fund in its custody." (P. 123.)

The Connecticut statute dealt with in the present case is in its purposes and provisions essentially like the Federal statute which was involved in the *Metropolitan Surety Co.* case (211 N. Y. 107, *supra*). This was pointed out in a decision in the Circuit Court of Appeals, Second Circuit (*F. H. McGraw & Co.* v. *Milcor Steel Co.,* 149 F. 2d 301, certiorari denied 326 U. S. 753). In that case the same Connecticut statutes which are here involved were considered, and, referring to them, CLARK, C. J., said, " Moreover, the entire scheme of protection differs from that of the earlier enactment and is similar to that afforded on federal projects by the Miller Act, 40 U. S. C. A. §§ 270a, 270b."

(P. 304.) In that case the surety company was interpleaded in an action in a United States District Court; but no point seems to have been made that such court did not have jurisdiction. Perhaps the point was not raised in the case. It is not considered in either the majority opinion of CLARK, C. J., or the dissenting opinion of HUTCHESON, C. J.

It is thus apparent that the Connecticut statute requiring a payment bond not only created the right of action but prescribed a specific remedy. '' It is also a general rule, however, that where a statute gives a right and also prescribes a particular remedy for the enforcement of such right, that remedy is exclusive and the right will not be enforced in a different forum or in a different way. [Citing cases.] '' (*Levitan* v. *Sanson,* 67 N. Y. S. 2d 298, 299.) (Cf. *Commonwealth of Pennsylvania* v. *Beals,* 139 Misc. 785; *Consolidated Coppermines Corp.* v. *Nevada Consolidated Copper Co.,* 127 Misc. 71, 73, citing *Gregonis* v. *P. & R. Coal & Iron Co.,* 235 N. Y. 152.)

Accordingly, the motion of the defendant Glens Falls Indemnity Company to dismiss the fourth count of the complaint for lack of jurisdiction of the subject matter of the action is granted.

Order signed.