JOHNSON ACOUSTICS, INC. *v.* P. J. CARLIN
CONSTRUCTION COMPANY ET AL.

SUPERIOR COURT        HARTFORD COUNTY        FILE NO. 168947

Memorandum filed August 31, 1971

*Harry L. Nair,* of Hartford, for the plaintiff.

*Coles, O'Connell & Dolan,* of Bridgeport, for the defendants P. J. Carlin Construction Company and Aetna Casualty and Surety Company.

*Robert Y. Pelgrift,* corporation counsel, for the town of West Hartford, garnishee.

SADEN, J.  On or about March 8, 1968, the town of West Hartford, as owner, signed a contract with the defendant P. J. Carlin Construction Company, here-inafter referred to as Carlin, as general contractor for construction of a school in West Hartford.  On or about the same day Carlin, as principal, and Aetna Casualty and Surety Company, hereinafter referred to as Aetna, as surety, signed a labor and material payment bond in favor of West Hartford for $6,402,000.  The plaintiff is a claimant qualified to file suit under the terms of the bond.  The bond specifically provides that a claimant must sue in a state court in the county where the project is situated, or in the federal District Court where the project is situated, "and not elsewhere."  The bond was required under § 49-41 of the General Statutes for the protection of persons supplying labor or

materials. On March 26, 1968, the plaintiff became a subcontractor of Carlin for certain labor and material in connection with the school. The plaintiff claims it performed its work and is entitled to $6,532.73, the unpaid balance on its claim which Carlin refuses to pay.

The contract between the plaintiff and Carlin contains a provision requiring the rights of the parties to be construed pursuant to New York law, and an agreement by the plaintiff that it will not commence any action, legal or equitable, against Carlin "or its sureties on bonds . . . because of any matter whatsoever arising out of the alleged breach or performance of this Subcontract Agreement in any Courts other than those in . . . New York, and the Subcontractor expressly waives any and all rights [it] might have by reason of the aforesaid bond provisions, if any, or by reason of any other cause whatsoever, to bring said action in any other court. The rights herein given the contractor shall also be deemed for the direct benefit of the aforesaid sureties . . . with the same force and effect as if they were parties hereto."

Our applicable statute, General Statutes § 49-42, provides that every person furnishing labor or material who has not been paid in full before the expiration of ninety days after the last day of furnishing labor or materials for which claim is made may prosecute a suit "in the superior court for the county where the contract was to be performed."

Carlin demurs on the ground that its contract with the plaintiff requires the suit to be heard and decided only in New York courts. It argues that the modern rule is contained in *Central Contracting Co. v. C. E. Youngdahl & Co.*, 418 Pa. 122, 133, which construed a similar provision in a suit on a contract between a subcontractor and the contractor. *Central*

sets forth Pennsylvania's view of the modern rule. But this case does not control the instant situation because it was not a suit on a labor and material-man's bond the terms of which provided that suit on it must be brought in the state where the work was performed. See footnote 7 on page 132 of *Central*, which very clearly points up the factual distinction in so many words.

In our case, we not only have a suit on a surety bond which by its terms requires suit to be brought in the county where the project is situated, but we also have General Statutes § 49-41, which makes such a bond mandatory and which must be read into the provisions of such a bond even if the bond's terms were to differ from the statute's. *International Harvester Co.* v. *L. G. DeFelice & Son, Inc.*, 151 Conn. 325, 333 (where the court further explains the main purpose of § 49-41 [to expedite completion of public works by affording means of protection to suppliers of labor and materials]) ; *New Britain Lumber Co.* v. *American Surety Co.*, 113 Conn. 1, 5.

For the same reasons that *Central*, supra, falls by the wayside as support for Carlin's position, so do *Schwartz* v. *Zim Israel Navigation Co.*, 15 Misc. 2d 576 (N.Y.), and *Berner* v. *United Airlines, Inc.*, 2 Misc. 2d 260, 266 (N.Y.). Both cases involved suits in which no statutory right or statutory bond was at issue making it mandatory to sue on the bond in a particular jurisdiction. Whatever may be said about permitting individuals to contract between themselves as to the jurisdiction in which they will litigate their differences, subject to certain conditions explained in *Central*, supra, even the rule laid down in *Central* will not honor the provision of a private contract, where the statutory rights of one party are effectively erased by that provision, which thus, as in our case, subverts an important public policy.

In our case, the plaintiff's claim under the bond against Aetna can only be pursued in Connecticut. Thus, pursuant to the language of *Central,* supra, 133, the private agreement between the plaintiff and Carlin would be considered "unreasonable . . . where its enforcement would, under all circumstances existing at the time of litigation, seriously impair plaintiff's ability to pursue his cause of action." In the instant case, a suit in New York by the plaintiff against Aetna on the surety bond would be met with defeat because of the terms of the bond itself and General Statutes § 49-41. *Omega New York Products Corporation* v. *Parisi Bros., Inc.,* 57 Misc. 2d 1000 (N.Y.) (where the defendant surety company obtained a dismissal of the plaintiff subcontractor's suit on a surety bond for payment of labor and materials, because the bond by its terms required suit in the Connecticut courts where the work had been performed); *Long* v. *Ferris,* 196 Misc. 567, 569 (N.Y.).

Carlin seeks to distinguish *Omega* on the ground that it did not involve a written agreement in which, as here, the plaintiff waived his rights to sue on the bond in any court except New York. If such a provision in a private contract relating to public works were to be given effect, it would clearly deprive the plaintiff of his right to sue in any court, because New York would not entertain the suit and the plaintiff would be barred by contract from suing in Connecticut. Thus, the entire rationale of § 49-41 would be destroyed, because such a provision as is in the contract here would simply wipe it out. Certainly the contract provision does not intend by its terms that the plaintiff is waiving all of his rights under the surety bond; it merely states that he waives his right to sue Carlin or his sureties anywhere except in New York. The surety company, Aetna, is a beneficiary of this provision, although not a party

to the contract between the plaintiff and Carlin, and of course would defend itself in New York as the surety company in *Omega,* supra, did. Thus, the agreement must at the very least be construed as "unreasonable" under the language of *Central Contracting Co.* v. *C. E. Youngdahl & Co.,* 418 Pa. 122, 133, because it seriously impairs—in fact, destroys—plaintiff's ability to pursue his rights under the statutory bond required by law in this case. See *Parker, Peebles & Knox* v. *El Saieh,* 107 Conn. 545, 557; Restatement, 2 Contracts § 558.

If in *Omega,* supra, the parties had a contract containing provisions like the one here, the result could not have been any different, because the statutory bond on which the plaintiff in *Omega* sought relief against the defendant surety company required, as here, a suit in Connecticut. What Carlin fails to acknowledge in its attempt to distinguish *Omega* is that the suit on the surety bond is governed by the terms of the bond itself, and these terms require a suit in Connecticut only. Had a provision similar to the one in the contract here been a part of the facts in *Omega,* it would not have created the right in the plaintiff to sue in the New York courts, because the defendant surety's rights were determined solely by the terms of the Connecticut statute and of its own bond.

The demurrer is overruled.