STATE ex rel. UNITED STATES
FIDELITY & GUARANTY
CO., Relator,

v.

Hon. Richard J. MEHAN, Judge, of the
Circuit Court of St. Louis City,
Missouri, Respondent.

No. 39736.

Missouri Court of Appeals,
Eastern District,
Division One.

Feb. 14, 1979.

David M. Duree, Francis L. Kenney, Jr., Kenney, Leritz & Reinert, P.C., St. Louis, for relator.

Donald S. Hilleary, Dennis J. Lenard, Clayton, for respondent.

SMITH, Judge.

United States Fidelity and Guaranty Co. (hereinafter U.S.F.& G.) sought our writ of prohibition to prevent respondent judge from proceeding further in a suit entitled "Board of Governors of State Colleges and Universities of the State of Illinois [hereinafter Board] for the Use and Benefit of Mesker of Chicago, Inc., a corporation [hereinafter Mesker] v. United States Fidelity & Guaranty Co., a corporation." We issued our preliminary writ and then after briefing and oral argument issued a divisional opinion quashing the preliminary writ. We then ordered a rehearing before an expanded panel and now make our preliminary writ permanent.

Alden Bennett Construction Co., Inc. entered into a contract in 1973 with the Board to construct the Commuter Center Addition of Northern Illinois University of Chicago, Illinois. Pursuant to Smith-Hurd Illinois Annotated Statutes, Chapter 29, § 15, Bennett, as prime contractor on the project, executed a performance and payment bond to the Board with U.S.F.& G. as surety thereon. Bennett then entered into a contract with Mesker (which despite its name is a Missouri corporation) for Mesker to supply hollow metal doors for the Addition.

In 1976, Mesker filed suit in the Circuit Court of the City of St. Louis, under the style heretofore set out, to recover on the bond for materials supplied to the Addition. U.S.F.& G. filed an answer and motion for judgment on the basis that the Circuit Court lacked jurisdiction over the subject matter by virtue of Smith-Hurd Illinois Annotated States, Chapter 29, § 16, which provides:

". . . Such suit [on the bond] shall be brought only in the Circuit Court of this state in the judicial district in which the contract is to be performed." [1]

Mesker contends that this restriction may not be imposed upon a "transitory" cause of action created by the State of Illinois. It is generally true that a transitory action, whether created by statute or common law may be brought in any court of competent jurisdiction where jurisdiction over the defendant can be obtained. In *Tennessee Coal, Iron & R. Co. v. George*, 233 U.S. 354, 34 S.Ct. 587, 58 L.Ed. 997 (1914) the Supreme Court held that a "state cannot create a transitory cause of action and at the same time destroy the right to sue on that transitory cause of action in any court having jurisdiction." l.c. 360, 34 S.Ct. 589. Such a statement, however, largely begs the question, for the question to be resolved is whether a statutorily created cause of action is in fact transitory or local. In *State of California v. St. Louis Union Trust Company*, 260 S.W.2d 821 (Mo.App. 1953) [16, 17] this court recognized that a particular cause of action created by statute could be made either transitory or local depending upon the provisions of the statute which created it. If the statute provides for a specific remedy, limited and prescribed, and tied to a local court, the cause of action created is local. This is in keeping with *Tennessee Coal, supra*, and *Burford v. Sun Oil Co.*, 319 U.S. 315, 63

---

1. Smith-Hurd Illinois Annotated Statutes, Chapter 29, §§ 15-16 have been attached as an addendum to this opinion.

S.Ct. 1098, 87 L.Ed. 1424 (1943). The teaching of *Tennessee Coal, supra,* and *Atchison, T.&S.F.R. Co. v. Sowers,* 213 U.S. 55, 29 S.Ct. 397, 53 L.Ed. 695 (1909) upon which it relies, is that the legislative decision to limit suit upon such cause of action to a specific court must be based upon some reasonable and legitimate state concern. Suspicion and distrust of the courts of sister states and protection of local business interests are not such reasonable and legitimate concerns. Both cases involved actions for personal injuries characterized in *Atchison* as "universally held to be transitory." (l.c. 67, 29 S.Ct. 397). In *Tennessee* no legitimate basis for the restriction of an otherwise transitory cause of action to Alabama appears. In *Atchison* the legislature specifically stated its reason for the restriction to be the protection of local business and the prevention of "derogation of the dignity of the courts" of the territory.

Before turning to a discussion of the reasonableness of the Illinois statute, we note that several courts, confronted with construction bond suits for work done in foreign jurisdictions having similar restrictions on the place of suit to that contained in the Illinois law have held that they lack jurisdiction because of such restriction. *See Long v. Ferriss,* 196 Misc. 567, 94 N.Y.S.2d 493 (City Ct.1949); *Omega New York Products Corp. v. Parisi Bros. Inc.,* 57 Misc.2d 1000, 293 N.Y.S.2d 878 (Sup.1968). Both state and federal courts in Illinois have held that suits brought other than in the court prescribed by the Illinois statute must be dismissed for lack of jurisdiction. *E.I. DuPont DeNemours & Co. v. McKay Engineering and Construction Co.,* 297 Ill.App. 495, 18 N.E.2d 64 (1938); *Village of Crainville ex rel. Pipe and Valve Supply Co. v. Argonaut Insurance Co.,* Civil No. 74–34–B (E.D. Ill. 5–24–76) (Unpublished). Federal courts have uniformly dismissed suits brought in a location other than that provided for in the Miller Act, 40 U.S.C.A. Sec. 270a et seq., which contains a similar restriction on suits, at least where the parties have not voluntarily agreed to a different forum. Some of these cases are based upon an absence of jurisdiction, others upon an absence of venue. *United States ex rel. Vermont Marble Co. v. Roscoe-Ajax Construction,* 246 F.Supp. 439 (N.D.Cal.1965); *U.S.F.& G. v. Hendry Corp.,* 391 F.2d 13 (5 Cir. 1968); *United States ex rel. Industrial Lumber Co., Inc. v. F.D. Rich Co., Inc.,* 473 F.2d 720 (9 Cir. 1973). In those cases where statutes requiring performance and payment bonds on construction projects in foreign jurisdictions do not contain provisions restricting suit to the project state, courts generally hold the action may be brought wherever personal jurisdiction is acquired. *State of Kansas ex rel. American Steel Works v. Hartford Accident and Indemnity Co.,* 426 S.W.2d 720 (Mo.App.1968); 85 A.L.R. 847. This is not universally true. *See Commonwealth of Pennsylvania ex rel. Beals v. Beals,* 139 Misc. 785, 249 N.Y.S. 232 (Sup. 1931). We have been cited to, and have found, no case holding forum restriction provisions in public construction bond statutes to be invalid or unenforceable.

In considering the question of reasonableness we note certain features of performance and payment bonds generally, and in particular the requirements of the Illinois statute. Initially the bond is intended to provide security to the state for damages it may incur because of the failure in performance of the contractor and the possibility that insolvency, bankruptcy or some other cause may make recovery of such damages from the contractor impossible. For this reason the contracting parties are the State or its instrumentality on the one hand and the contractor and surety on the other. The second purpose of the bond is to protect materialmen and mechanics from losses due to non-payment by the contractor for their goods and services that have gone into the structure. Again the bond serves to prevent loss because of the difficulty or impossibility of recovering from the contractor. The latter bond protections in large part parallel those available under materialmen's and mechanics' liens in private construction, which liens are not available against public construction projects. The provisions of the statute require that subcontractors, materialmen and laborers

may, after filing a notice of claim with the *state*, sue on the bond in the name of the *state* or political subdivision for the use and benefit of the claimant. The Illinois courts have held that no right of suit against the bond lies by a claimant, even as a third party beneficiary, except under the provisions of the statute. *Board of Education v. Pacific National Fire Ins. Co.*, 153 N.E.2d 498 (Ill.App.1958) [2].

 For the following reasons we do not find the restriction on suit provision unreasonable, and conclude that the cause of action created by the statute is local in nature:

1. The provisions closely parallel the relief available under mechanics' and materialmen's liens which are traditionally throughout the country, and specifically in Illinois, local actions restricted to the situs of the project. Smith-Hurd Annotated Statutes, Chapter 82, § 9.

2. The Illinois legislature has provided that the action may be brought in the name of the State. It is peculiarly a legislative function to determine or restrict the forums in which the State may sue.

3. Bond suits frequently involve complex issues, multiple parties, cross-claims, counterclaims, interventions, and consolidations. On occasions the total amount of the claims or the damages awarded may exceed the total amount of the bond obligation. It is reasonable that a single forum be provided for the adjudication of such matters. It is also reasonable and logical that the forum provided be at the situs of the project where all parties by their voluntary actions have come to do business.[2] Such location may provide the only forum in which all interested parties may be compelled to appear. See discussion of similar considerations as they pertain to the Miller Act in

*United States Fidelity and Guaranty Company v. Hendry Corporation, supra.* We also note that the Illinois legislature has not only precluded suits on the bond in foreign courts, but has also precluded such suits in its own courts other than those where the project is located. This is not evidence of the parochial distrust of foreign jurisdictions found in *Tennessee Coal, supra*, and *Atchison, supra.*

4. The action here is not one for personal injury nor one having common law roots. It is exclusively a statutory cause of action to provide a specific protection to a specific group of readily identifiable parties. Its purpose is to provide security through the surety for the contractual failings of the general contractor and presumably would not prevent suit against the contractor alone on general common law contract theories wherever the contractor is amenable to service. (But, *see, United States Fidelity and Guaranty Co. v. Hendry Corp., supra*, as to the legal effect of such suit on the surety's liability in Miller Act cases.) The action therefore is not one which is "universally held to be transitory."

We find the statutory limitation on the situs of suit to be reasonable and that it precludes the trial court from proceeding on this statutory cause of action because it lacks jurisdiction of the subject matter.

Our preliminary writ of prohibition is made permanent.

WEIER, C. J., and KELLY, GUNN, STEWART, STEPHAN and SNYDER, JJ., concur.

### ADDENDUM

"§ 15. Bond required—Provisions required in bond

---

**2.** Under Illinois law the terms of the statute become a part of the bond contract. *Chicago Housing Authority ex rel. General Bronze Corp. v. United States Fidelity and Guaranty Co.*, 49 Ill.App.2d 407, 199 N.E.2d 217 (1964). Mesker is bound by the terms of that contract, which include the limitations concerning the place of bringing suit. *Omega New York Products, supra; Alwinseal, Inc. v. Travelers Indemnity Co.*,

61 A.D.2d 803, 402 N.Y.S.2d 33 (1978), and see *Bradford Electric Light Co. Inc. v. Clapper*, 286 U.S. 145, 52 S.Ct. 571, 76 L.Ed. 1026 (1932). Mesker chose to participate in the Addition construction and if it desired the security afforded to it by the bond it must be prepared to accept the conditions under which the bond was issued.

All officials, boards, commissions or agents of this State, or of any political subdivision thereof in making contracts for public work of any kind to be performed for the State, or a political subdivision thereof shall require every contractor for such work to furnish, supply and deliver a bond to the State, or to the political subdivision thereof entering into such contract, as the case may be, with good and sufficient sureties. The amount of such bond shall be fixed by such officials, boards, commissions, commissioners or agents, and such bond, among other conditions, shall be conditioned for the completion of the contract, for the payment of material used in such work and for all labor performed in such work, whether by sub-contractor or otherwise.

Each such bond is deemed to contain the following provisions whether such provisions are inserted in such bond or not:

'The principal and sureties on this bond agree that all the undertakings, covenants, terms, conditions and agreements of the contract or contracts entered into between the principal and the State or any political subdivision thereof will be performed and fulfilled and to pay all persons, firms and corporations having contracts with the principal or with subcontractors, all just claims due them under the provisions of such contracts for labor performed or materials furnished in the performance of the contract on account of which this bond is given, when such claims are not satisfied out of the contract price of the contract on account of which this bond is given, after final settlement between the officer, board, commission or agent of the State or of any political subdivision thereof and the principal has been made.'

The bond required by this Section may be acquired from the company, agent or broker of the contractor's choice, subject to the right of reasonable approval or disapproval by the State or political subdivision thereof concerned.

§ 16. Recovery on bond—Notice of claim—Limitation

Every person furnishing material or performing labor, either as an individual or as a sub-contractor for any contractor, with the State, or a political subdivision thereof where bond shall be executed as provided in this Act, shall have the right to sue on such bond in the name of the State, or the political subdivision thereof entering into such contract, as the case may be, for his use and benefit, and in such suit the plaintiff shall file a copy of such bond, certified by the party or parties in whose charge such bond shall be, which copy shall, unless execution thereof be denied under oath, be prima facie evidence of the execution and delivery of the original; provided, however, that this Act shall not be taken to in any way make the State, or the political subdivision thereof entering into such contract, as the case may be, liable to such sub-contractor, materialman or laborer to any greater extent than it was liable under the law as it stood before the adoption of this Act. Provided, however, that any person having a claim for labor, and material as aforesaid shall have no such right of action unless he shall have filed a verified notice of said claim with the officer, board, bureau or department awarding the contract, within 180 days after the date of the last item of work or the furnishing of the last item of materials. The claim shall be verified and shall contain (1) the name and address of the claimant; the business address of the claimant within the State and if the claimant shall be a foreign corporation having no place of business within the State, the notice shall state the principal place of business of said corporation and in the case of a partnership, the notice shall state the names and residences of each of the partners; (2) the name of the contractor for the government; (3) the name of the person, firm or corporation by whom the claimant was employed or to whom he or it furnished materials; (4) the amount of the claim; (5) a brief description of the public improvement sufficient for identification.

No defect in the notice herein provided for shall deprive the claimant of his right of action under this article unless it shall affirmatively appear that such defect has

prejudiced the rights of an interested party asserting the same.

Provided, further, that no action shall be brought until the expiration of one hundred and twenty (120) days after the date of the last item of work or the furnishing of the last item of materials, except in cases where the final settlement between the officer, board, bureau or department of municipal corporation and the contractor shall have been made prior to the expiration of the one hundred and twenty (120) day period, in which case action may be taken immediately following such final settlement; nor shall any action of any kind be brought later than six (6) months after the acceptance by the State or political subdivision thereof of the building project or work. Such suit shall be brought only in the circuit court of this State in the judicial district in which the contract is to be performed."