Jean-Marc ABADOU, Appellant,

v.

Dimitri N. TRAD, Appellee.

No. 4791.

Supreme Court of Alaska.

Feb. 27, 1981.

---

Francis J. Nosek, Jr., and Brian R. Shute, Anchorage, for appellant.

Charles P. Flynn, Burr, Pease & Kurtz, Inc., Anchorage, for appellee.

Before RABINOWITZ, C. J., CONNOR, BURKE and MATTHEWS, JJ., and COOKE, Superior Court Judge.

## OPINION

RABINOWITZ, Chief Justice.

The only issue presented is a narrow one: the validity and effect of a contractual choice-of-forum clause designating Lebanon's courts as the exclusive forum for the resolution of disputes arising from the parties' contract.[1]

At the time of the contract, entered into at Beirut in 1974, appellant Abadou was a French national and appellee Trad was a Lebanese citizen. Both resided in Beirut. Abadou has subsequently become a resident of the United States. The contract concerned the parties' joint ownership of lands purchased in Alaska and in the State of Washington, and included the parties' agreements regarding their respective duties to make payments on the subject land sales contracts. The contract also involved land in Lebanon, the parties' respective interests in a corporation holding in Italy, and settlements concerning other past dealings.

A dispute arose between the parties over Trad's alleged failure to make payments on the Alaska land contract, and in December of 1978, Abadou filed a "complaint for contribution from co-tenant and foreclosure of equitable lien" in the superior court. Trad countered with a motion to dismiss pursuant to Alaska R.Civ.P. 12(b)(1), (2), (3) and (6).[2] In support of his motion to dismiss, Trad relied on the choice-of-forum clause in the contract.

After a hearing, Judge Ripley dismissed the action, specifically declining to take judicial notice of any state of unrest and disarray in the Lebanese courts without proof.[3] Abadou moved for reconsideration.

1. The clause reads as follows:
   The stipulations of the present contract will be governed by Lebanese Law, and the Law Courts of Beirut will be the only competent jurisdiction to settle any dispute arising from the interpretation of the present contract or from any circumstance related to its execution.

2. The pertinent sections of Alaska R.Civ.P. 12(b) provide:
   (b) *How Presented.* Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: (1) lack of jurisdiction over the subject matter, (2) lack of jurisdiction over the person, (3) improper venue, ... (6) failure to state a claim upon which relief can be granted ....

3. Abadou has had at least two opportunities to present evidence or to file affidavits about the alleged danger to himself or the alleged state of disarray in the justice system in Lebanon. Prior to the April 13th hearing, he could have submitted evidence and affidavits in connection with his opposition to Trad's motion to dismiss under Alaska R.Civ.P. 12(b)(3). In declining to take judicial notice of the alleged conditions in Lebanon, Judge Ripley stated:

[P]laintiff, in his opposition, simply states that the religious persuasions of the parties and the civil unrest in Lebanon—he argues in the memorandum that the legal system in Lebanon is in a state of disarray and given the difference in the religious persuasions of the parties, a fair trial could not be had by the client because of the political and legal climate there. He asserts this; there is no affidavit in support of it and seems to indicate that the Court should take judicial notice of that fact. I specifically decline to take judicial notice of any state of unrest or disarray in courts in Lebanon or any other foreign country and—without further proof on that.

Despite this challenge to produce evidence to support his allegations, Abadou still did not bolster his April 25, 1979, motion for reconsideration with any evidence or with any affidavits supporting the assertions he made therein about the state of affairs in Beirut. His motion does make reference to an "Exhibit A," a letter from the Lebanese "counsel" in the United States "indicating the unreliability of the Lebanese civil court system"; but, even assuming such a communication would suffice, no such "Exhibit A" is in the record. At oral argument before the court below, counsel for Abadou indicated that he had not received the anticipated letter.

In denying this motion, the superior court emphasized the extreme complexity of the dealings between the parties that necessarily would be involved in any suit on the contract. The case was dismissed without prejudice, reserving to Abadou the right to return to the superior court if he attempts to file and prosecute his suit in Lebanon and the Lebanese courts refuse to accept jurisdiction of the matter. This appeal followed.

## I

Our recent case of *Volkswagenwerk, A. G. v. Klippan, GmbH*, 611 P.2d 498 (Alaska 1980), *cert. denied*, —— U.S. ——, 101 S.Ct. 385, 66 L.Ed.2d 236 (1980), is dispositive as to the general effect of contractual choice-of-forum clauses. There we followed the lead of the United States Supreme Court in *M/S Bremen v. Zapata Off-shore Co.*, 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972), in rejecting the old rule that such clauses are per se invalid. Instead, once it is concluded that the clause truly specifies a mandatory, exclusive forum for the litigation of the dispute in question, the party seeking to escape enforcement of the clause has the burden of showing that trial in the contractual forum will be so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court, or that enforcement of the clause would contravene a strong public policy of the forum in which suit is originally brought. *Volkswagenwerk*, 611 P.2d at 503–04.

Abadou's claim that the contractual clause in question "ousts" the court of its rightful jurisdiction is without merit. As the Supreme Court noted in *Bremen*, such an argument is hardly more than a vestigal legal fiction, and the question is really whether the court should choose to exercise its jurisdiction to do more than enforce the clause agreed upon by the parties. *Bremen*,

407 U.S. at 12, 92 S.Ct. at 1914, 32 L.Ed.2d at 521–22. The form of the superior court's order, a dismissal without prejudice with the option of reinstituting the suit if the Lebanese courts refuse to hear it, makes it clear that the superior court reached its decision as a matter of venue, and not as a matter of jurisdiction.

Thus, we hold that the contractual choice-of-forum clause in this contract is not per se void.

## II

Abadou next argues that AS 22.10.030,[4] which requires that certain actions concerning real property be commenced in the superior court in the judicial district in which the property is situated, requires that this action be brought in Alaska and renders void any decision that would be made concerning the land in Alaska by a Lebanese court.

Although forum statutes have been held to overcome forum selection contractual clauses, those decisions rely heavily on language of exclusivity present in those forum statutes which is not present in AS 22.10.-030. *United States for use of Vermont Marble Co. v. Ajax Construction Co.*, 246 F.Supp. 439 (N.D.Cal.1965) (relying on statement in the statute that the proceeding was to be brought in particular forum "and not elsewhere"); *United States for use of MGM Construction Co. v. Aetna Casualty & Surety Co.*, 38 F.R.D. 418 (N.D.Cal. 1965) (relying on "and not elsewhere" language); *Johnson Acoustics, Inc. v. P. J. Carlin Construction Co.*, 29 Conn.Sup. 457, 292 A.2d 273 (1971) (relying on an "and not elsewhere" provision in bond required by state statute).

We hold that in the absence of statutory language of exclusivity, a contractual choice-of-forum clause will prevail over a venue statute, unless some other factor (*e. g.*, inequality of bargaining pow-

---

4. AS 22.10.030 provides in relevant part:

   *Where actions are to be brought.* (a) All actions in ejectment or for the recovery of the possession of, quieting title to, for the partition of, or the enforcement of liens upon, real property shall be commenced in the superior court in the judicial district in which the real property, or any part of it affected by the action, is situated.

er) renders such a result inequitable. *See Deeb, Inc. v. Board of Public Instruction,* 196 So.2d 22 (Fla.App.), *appeal quashed,* 200 So.2d 649 (Fla.App.1967). Since the language of AS 22.10.030 does not provide that the forum identified in the statute is to be the exclusive forum for disputes concerning land located in Alaska, and since there is no evidence of an inequality in bargaining power here, the contractual clause providing for jurisdiction in the Lebanese courts will prevail over the statutory venue provision here.

## III

Abadou argues that it is particularly significant that the object of this dispute is Alaska real estate, raising questions concerning both the jurisdiction of the Lebanese courts to issue orders with respect to Alaskan land and public policy pertaining to allowing a foreign court to make decisions that affect land in Alaska.

■ Assuming Lebanese law as to its courts' jurisdiction with respect to foreign real estate is similar to our own, the Lebanese court could, as a matter of its *in personam* jurisdiction over the parties, order them to execute deeds to the land among themselves.[5] It could also order other relief appropriate to the resolution of the other issues arising under this contract. The Lebanese court could not, of course, order a partition of the land or the judicial sale that Abadou requests in his complaint. If the Lebanese court finds that it cannot resolve the issues raised in this dispute within the limits of its jurisdiction, then, as the superior court's order indicates, Abadou would have grounds for reinstituting his action in the courts of Alaska.

As to the public policy implications of allowing a foreign court to make decisions regarding title to land in Alaska, the Alaskan courts would have enough flexibility to deny effect to a Lebanese judgment that inordinately contravened Alaska's interests.

First, to the extent that a Lebanese judgment purported to actually convey the Alaskan land from one party to the other, the decree would exceed the jurisdiction of the Lebanese court and would therefore be void.[6]

To the extent that the Lebanese judgment grants or denies recovery of a sum of money, it is governed by the provisions of the Uniform Foreign Money-Judgments Recognition Act, AS 09.30.100–.180, which requires the courts of this state to treat the judgment of a court in a foreign country in the same manner as the judgment of a sister state which is entitled to full faith and credit, AS 09.30.110, unless it meets one of the grounds for nonrecognition listed in AS 09.30.120.[7]

5. *See* Restatement (Second) of Conflict of Laws §§ 55, 102 & comments d & g (1971).

6. "The only state which can, by operation of law and apart from the act of the parties, transfer title in land out of one person and into another is the state where the land lies." R. Leflar, American Conflicts Law § 173 (3d ed. 1977) (footnote omitted).

7. *Sec.* 09.30.120. *Grounds for nonrecognition.*
   (a) A foreign judgment is not conclusive if
   (1) the judgment was rendered under a system which does not provide impartial tribunals or procedures compatible with the requirements of due process of law;
   (2) the foreign court did not have personal jurisdiction over the defendant; or
   (3) the foreign court did not have jurisdiction over the subject matter.
   (b) A foreign judgment need not be recognized if

   (1) the defendant in the proceedings in the foreign court did not receive notice of the proceedings in sufficient time to enable him to defend;
   (2) the judgment was obtained by fraud;
   (3) the cause of action on which the judgment is based is repugnant to the public policy of this state;
   (4) the judgment conflicts with another final and conclusive judgment;
   (5) the proceeding in the foreign court was contrary to an agreement between the parties under which the dispute in question was to be settled otherwise than by proceedings in the court; or
   (6) in the case of jurisdiction based only on personal service, the foreign court was a seriously inconvenient forum for the trial of the action.

To the extent that the Lebanese judgment orders one party to convey land to the other, its effect in Alaska has to be determined by the common law applicable to foreign judgments:

> Apart from possible treaties or federal common law, there is no compulsion on any American state to recognize or enforce judgments from foreign countries. An American court can deny effect to a foreign judgment because it does not like the kind of service employed even though the service was valid, or because the foreign judgment is on a cause of action that the forum court for any reason dislikes. If a real difference in social policy exists this result is justifiable, since it is possible that alien lands enforcing their own systems of law may render judgments on strange claims unknown to our law and contrary to our mores. This, however, would be unusual.
>
> . . . .
>
> [M]ere differences in local law do not necessarily give rise to the strong policy objections which justify refusal to recognize foreign judgments. Differences in strong public policy among civilized states today should not readily be found when judgments have been rendered under circumstances which satisfy our own basic concepts of due process of law.

R. Leflar, *American Conflicts Law* § 84, at 170–71 (3d ed. 1977) (footnotes omitted). In determining the enforceability of these judgments, we will be guided in part by the grounds for non-enforceability set out by the legislature for foreign money-judgments. As to issues concerning real property, some commentators have suggested that an additional ground may be the failure of the foreign court to apply the "law of the situs" to title issues:

> At least in cases affecting American citizens, recognition may also be refused to foreign judgments based on choice of law rules inconsistent with those of the forum. The most obvious case of this type would be one involving title to land where the foreign court failed to apply the law of the situs.

A. Ehrenzweig, *Conflict of Laws* § 56, at 202 (1962) (footnote omitted). We need not decide whether or not we would actually adopt this rule. We are sufficiently persuaded that since "the only state which by the action of its courts can change the title of particular land is that of the situs,"[8] the courts of Alaska will ultimately have to decide the enforceability of foreign judgments affecting Alaskan land (assuming the parties continue to contest the issue). At that point, there will be adequate opportunity to assess the foreign judgment in terms of its possible effect on Alaska's public policies and vindicate those policies if necessary, keeping in mind that mere differences in local law do not necessarily give rise to the strong policy objections which justify refusal to recognize foreign judgments.[9]

Therefore, the fact that the dispute in this case concerns land in Alaska does not make it improper to give effect to the contractual choice-of-forum clause and to hold, as a matter of venue, that Abadou should first bring his claim before the courts of Lebanon, and that only if he cannot obtain

---

8. R. Leflar, American Conflicts Law § 165 (3d ed. 1977).

9. *Id.* § 84, at 170; A. Ehrenzweig, Conflict of Laws § 56, at 203 (1962) ("mere dissimilarities between the laws of the forum and the judgment state are not tantamount to a violation of public policy").

  *Since the courts of Lebanon have not decided the issue, it is inappropriate for us to express* any opinion on whether enforcement of the liquidated damages provision of the contract, which might not be allowed under Alaska law, *see Arctic Contractors, Inc. v. State,* 564 P.2d 30 (Alaska 1977), *after remand,* 573 P.2d 1385 (Alaska 1978), might constitute such a departure from Alaska's public policy as to require non-enforcement of the judgment.

relief in that forum should he be able to re-file his action in an Alaskan court.

## IV

We have considered Abadou's other constitutional, statutory, and common-law arguments and have found them to be without merit.

The superior court's dismissal without prejudice of Abadou's complaint is affirmed.

BOOCHEVER, J., not participating.